# United States Court of Appeals
## For the First Circuit

No. 12-1180

UNITED STATES OF AMERICA,

Appellee,

v.

JORGE APONTE-GUZMÁN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpi, U.S. District Judge]

Before

Torruella, Selya and Howard,
Circuit Judges.

Héctor E. Gúzman, Jr., Federal Public Defender, and Héctor L. Ramos-Vega, Assistant Federal Public Defender, Supervisor, Appeals Section, on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Luke Cass, Assistant United States Attorney, on brief for appellee.

October 16, 2012

**SELYA**, **Circuit Judge**.   In response to a national hue and cry about the disparity between sentences for powder cocaine offenses and crack cocaine offenses,[1] the Sentencing Commission lowered the advisory guideline ranges for certain of the latter offenses.  See USSG App. C, Amends. 748, 750.  The Commission made it clear that the new guideline ranges applied retroactively.  See USSG App. C, Amend. 759.  Amendments 750 and 759 (hereinafter, "the new guideline amendments") went into effect on November 1, 2011.

In fashioning this relaxed regime, the Sentencing Commission took pains to safeguard the district courts' discretion with respect to reduction of sentences previously imposed: sentencing courts were empowered, not compelled, to make retroactive sentence adjustments case by case.  This appeal tests the limits of this preserved discretion.  After careful consideration, we affirm the district court's refusal to disturb the appellant's sentence.  The tale follows.

On June 11, 2009, a federal grand jury sitting in the District of Puerto Rico indicted fifty-eight defendants.  The indictment alleged that the defendants had participated in a massive drug-trafficking enterprise.  Defendant-appellant Jorge Aponte-Guzmán was named in six substantive counts.

---

[1] Throughout this opinion, we use the term "crack cocaine" as a shorthand for the more technical description of the same substance ("cocaine base").

The appellant initially maintained his innocence. On April 21, 2010, however, he changed his plea and entered a guilty plea on two counts: conspiracy to possess with intent to distribute various controlled substances (including crack cocaine), and conspiracy to possess firearms in furtherance of a drug-trafficking crime. See 21 U.S.C. §§ 841(a)(1), 846, 860; 18 U.S.C. § 924(c)(1). In a written plea agreement, the parties stipulated that the appellant would be held responsible for at least 150, but less than 500, grams of crack cocaine. The district court accepted the change of plea. The appellant's adjusted offense level was 32 and the court placed him in criminal history category I. These calculations yielded a guideline sentencing range ("GSR") of 135-168 months. On July 27, 2010, the court sentenced the appellant to a 150-month incarcerative term (as jointly recommended by the parties). The court then dismissed the other charges originally brought against the appellant.

On August 3, 2010, Congress enacted the Fair Sentencing Act of 2010 (FSA), now codified at 21 U.S.C. §§ 841, 960. Pertinently, the FSA gave the Sentencing Commission emergency authority to lower the guideline penalties for crack cocaine offenses. See United States v. Curet, 670 F.3d 296, 309 (1st Cir. 2012). As part of its response, the Commission promulgated the new guideline amendments, which collectively implemented the FSA's emergency authorization; modified the Drug Quantity Table, USSG

-3-

§2D1.1(c), to increase the amounts of crack cocaine required to trigger certain sequential base offense levels; lowered the guideline ranges for crack cocaine offenses accordingly; ensured that the lowered guideline ranges would for the most part be available for retroactive application; and made other facilitative changes not relevant here.

In anticipation of the November 1, 2011 effective date, the appellant filed a motion for a sentence reduction under 18 U.S.C. § 3582(c)(2).[2] The district court ordered supplemental briefing and sought a recommendation from the probation office. After considering these materials, the court, in a succinct docket order entered on December 27, 2011, denied the motion.

Despite its brevity, the docket order illuminated the court's rationale. According to the order, the court declined to reduce the sentence "in the exercise of its discretion." The appellant, it explained, was not a garden-variety narcotics

---

[2] This statute provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

offender but, rather, "was a drug point owner" who had "entered into an extremely beneficial and narrowly tailored plea agreement in which he stipulated [to] a very reduced crack amount." To make matters worse, he had been "involved with firearms." This timely appeal ensued.

This court reviews a district court's denial of a section 3582(c)(2) motion for abuse of discretion. See United States v. Caraballo, 552 F.3d 6, 8 (1st Cir. 2008); United States v. Rodríguez-Peña, 470 F.3d 431, 432 (1st Cir. 2006) (per curiam). Leaving to one side claims of procedural error — no such claim is asserted here — such review, in the sentencing context, is tantamount to review for reasonableness. See, e.g., Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008).

The appellant's attack on the district court's order starts with a suggestion that the order is ambiguous and can be interpreted as finding him ineligible for a sentence modification. The ambiguity, he says, derives from the cut-off point contained in the new guideline amendments: under those amendments, defendants who have been convicted of trafficking in more than 450 grams of crack cocaine are effectively ineligible for retroactive sentence adjustments. In the appellant's view, this ambiguity may have led to the denial of his motion. After all, his plea agreement stipulated that he should be held responsible for between 150 and

500 grams of crack cocaine; and the sentencing court may have thought that because the upper end of this range exceeded the cut-off point, the appellant was ineligible per se for a sentence reduction. Building on this speculative foundation, the appellant asseverates that the uncertainty about whether a defendant who pleads guilty to a drug-quantity spread that traverses several base offense levels (some of which lie above the ceiling for eligibility contemplated by the new guideline amendments), rather than to a precise drug quantity is eligible for a sentence reduction under the new guideline amendments demands the application of the rule of lenity. We think not.

We do not gainsay that "[i]n a criminal case, the rule of lenity requires a court to resolve true statutory uncertainty in the accused's favor." United States v. Ahlers, 305 F.3d 54, 62 (1st Cir. 2002). But even though this rule is ingrained in the criminal law, it has no pertinence here for at least two reasons.

First, the case law makes pellucid that the rule of lenity, which has a laser-like statutory focus, does not apply to drug-weight calculations under the sentencing guidelines. See, e.g., United States v. Gonzalez, 407 F.3d 118, 124 (2d Cir. 2005); United States v. McEntire, 153 F.3d 424, 438 n.16 (7th Cir. 1998). Such calculations do not present questions of statutory ambiguity and, therefore, do not raise concerns that may be redressed through an application of the rule of lenity.

Second — and equally as dispositive — the  question of how to create an interface between the new guideline amendments and a drug-quantity spread that encompasses amounts both above and below the cut-off point is not implicated here.  In denying the appellant's sentence reduction motion, the district court stated in no uncertain terms that it was exercising its discretion.  This explicit statement shows beyond hope of contradiction that the court, as a threshold matter, treated the appellant as a person eligible for, but not deserving of, a sentence reduction.

The appellant's fallback argument is that, given his eligibility for a sentence reduction and the possible applicability of a lowered sentencing range,[3] the district court abused its discretion in refusing to diminish his sentence.  This argument lacks force.

Section 3582(c)(2) itself states that, in a case in which a modified sentence may be proper, "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the

---

[3] The Drug Quantity Table, USSG §2D1.1(c), as amended by the new guideline amendments, no longer contains a single GSR for drug-trafficking offenses involving between 150 and 500 grams of crack cocaine.  Depending on how one parses the parties' drug-quantity stipulation, the defendant's GSR under the new guideline amendments could have been as low as 87-108 months or as high as 135-168 months (the same GSR that obtained when the appellant's sentencing took place).

Sentencing Commission." 18 U.S.C. § 3582(c)(2) (emphasis supplied). By using the precatory term "may," rather than the directory term "shall," Congress indicated its intent to make section 3582(c)(2) sentence reductions discretionary, not a matter of right. See United States v. Rodgers, 461 U.S. 677, 706 (1983) (explaining that "[t]he word 'may,' when used in a statute, usually implies some degree of discretion"). Consistent with this indicium of Congressional intent, the case law makes manifest that the grant or denial of a section 3582(c)(2) motion is a matter committed to the sentencing court's sound discretion. See, e.g., Rodríguez-Peña, 470 F.3d at 432. Section 3582(c)(2) "instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case." Dillon v. United States, 130 S. Ct. 2683, 2692 (2010).

There is nothing in the text of the new guideline amendments that diminishes this discretion. In promulgating those amendments, the Sentencing Commission empowered district courts to reduce some crack cocaine sentences previously imposed; it did not direct the district courts to make such reductions, come what may.

In the case at hand, the district court — though it admittedly took a hard line — acted within the encincture of its discretion. The judge who imposed the appellant's original sentence also passed upon the sentence reduction motion. Giving

due weight to his superior coign of vantage and his hands-on familiarity with the case, we must approach his refusal to shrink the sentence with a considerable measure of respect.

To be sure, deferential review is never to be confused with blind allegiance to the decision of the lower court. Here, however, the district court's order, though terse, contained adequate reasons for its action. The court specifically referenced the appellant's role as "a drug point owner," a drug trafficker "involved with firearms," and a co-conspirator who had "entered into an extremely beneficial . . . plea agreement" and had received the benefit, via the government's stipulation, of "a very reduced crack amount."[4]

There is one last data point. If the district court deemed the appellant to have been responsible for 280 or more grams of crack cocaine — a decision that would have fit comfortably with the drug-quantity stipulation contained in the plea agreement — the appellant's GSR would not have changed at all. In other words, the GSR would have remained at 135-168 months. This parity would, of course, argue powerfully against the need for a sentence reduction.

_____

[4] It is common ground that, in drug cases, sentencing ranges under the advisory guidelines are influenced to a great extent by drug quantity. See, e.g., United States v. Platte, 577 F.3d 387, 392 (1st Cir. 2009); United States v. Collado, 975 F.2d 985, 995 (3d Cir. 1992). Consequently, the government's stipulation to what the district court described as "a very reduced crack amount" may well have resulted in an artificial lowering of the appellant's original sentence.

We need go no further. The catalogued factors plainly indicate that the court gave individualized consideration to the appellant's situation and had specific — and not unreasonable — grounds for denying a sentence reduction. The doubt about whether the new guideline amendments actually affected the appellant's GSR buttresses the court's conclusion. In these circumstances, there was no abuse of discretion.

**<u>Affirmed</u>**.