# United States Court of Appeals
## For the First Circuit

No. 20-2045

UNITED STATES OF AMERICA,

Appellee,

v.

STEPHEN A. SACCOCCIA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Thompson, Selya, and Hawkins,[*]
Circuit Judges.

Shon Hopwood, with whom Kyle Singhal, Ann Marie Hopwood, and
Hopwood & Singhal PLLC were on brief, for appellant.
Lauren S. Zurier, Assistant United States Attorney, with whom
Richard B. Myrus, Acting United States Attorney, was on brief, for
appellee.

August 18, 2021

---

[*] Of the Ninth Circuit, sitting by designation.

**SELYA**, **Circuit Judge**.  Defendant-appellant Stephen A. Saccoccia, who is serving a 660-year prison sentence, seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A), as recently amended by the First Step Act (FSA), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).  Saccoccia argued below that several factors, including his failing health and the unusual length of his prison sentence, militate in favor of his release.  The district court disagreed and refused to exercise its discretion to Saccoccia's behoof.  Saccoccia renews his arguments on appeal. After careful consideration, we leave him where we found him and affirm the judgment below.

**I**

We briefly rehearse the relevant facts and travel of the case.  Roughly three decades ago, a jury convicted Saccoccia (a dealer in precious metals) of a panoply of criminal offenses connected to his role in laundering more than $136,000,000 for a Colombian drug cartel.  The district court sentenced him to the statutory maximum on each of the fifty-four counts of conviction and ran the sentences consecutively to aggregate a 660-year term of immurement.  We affirmed Saccoccia's sentence, explaining that his guideline sentencing range (GSR) was life imprisonment and noting that the effect of the consecutive sentences imposed by the district court was functionally equivalent to a life sentence

- 2 -

without the possibility of parole.  See United States v. Saccoccia (Saccoccia I), 58 F.3d 754, 786 & n.28 (1st Cir. 1995).

In the past, Saccoccia has persistently challenged his conviction, sentence, and forfeiture order.  See, e.g., Saccoccia v. United States, 955 F.3d 171, 172, 173 n.4 (1st Cir. 2020); United States v. Saccoccia, No. 91-115, 2004 WL 1764556, at *1 (D.R.I. Aug. 2, 2004).  Shortly after passage of the FSA, he moved for compassionate release based on health-related concerns.  He ultimately withdrew that motion but — in May of 2020 — again sought compassionate release.  The motion was filed at the height of the COVID-19 pandemic.  In support, Saccoccia argued that there were several "extraordinary and compelling reasons" warranting a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), which is commonly referred to as the compassionate-release statute.  18 U.S.C. § 3582(c)(1)(A)(i).  First, Saccoccia pointed to his chronic hypertension and hyperlipidemia, among other health-related concerns, which he alleged placed him at heightened risk for complications stemming from COVID-19.  In subsequent filings, Saccoccia also pointed to an elevated prostate-specific antigen (PSA) level — an indicium of prostate cancer.  Additionally, Saccoccia argued that the sheer length of his prison term constituted an extraordinary and compelling reason for his release.

Because the district judge who originally sentenced Saccoccia had retired, the compassionate-release motion was referred to a different judge. The district court, in the person of the newly assigned judge, denied Saccoccia's motion. See United States v. Saccoccia (Saccoccia II), No. 91-115, 2020 WL 6153694, at *1 (D.R.I. Oct. 19, 2020). It concluded that Saccoccia did not demonstrate that his hypertension and hyperlipidemia put him at increased risk for severe complications from COVID-19 so as to warrant compassionate release. See id. at *2. The court declined to give substantive consideration to Saccoccia's arguments regarding his other medical conditions, deeming them insufficiently developed. See id. at *2 n.1. The court also concluded that the length of Saccoccia's sentence, even if potentially cognizable as a reason for compassionate release, did not, in the circumstances at hand, warrant such relief. See id. at *3. Completing its analysis, the court mulled the sentencing factors limned in 18 U.S.C. § 3553(a) and determined that those factors did not weigh in Saccoccia's favor. See id. at *4. This timely appeal followed.

## II

We begin our analysis with a concise explanation of the statutory framework governing compassionate release and an overview of how courts generally handle such motions. We then address Saccoccia's claims with respect to his health-related

- 4 -

concerns.  Finally, we turn to his arguments concerning the length of his sentence, matters ancillary to sentence length, and the district court's treatment of the section 3553(a) factors.

**A**

Federal law has for some time provided that a court, on motion of the Federal Bureau of Prisons (BOP), "may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable," upon a finding that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A) (2000); see also Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, 1998-99 (1984).  This compassionate-release statute carved out a narrow exception to the general rule that "[t]he court may not modify a term of imprisonment once it has been imposed."[1]  18 U.S.C. § 3582(c).

In 2018, Congress passed the FSA.  See Pub. L. No. 115-391, 132 Stat. 5194 (2018).  Pertinently, the FSA amended the

---

[1] The statute also allows a district court to reduce a sentence when a defendant with a mandatory life sentence reaches at least seventy years of age, has served at least thirty years, and is not a danger to the safety of the community.  See 18 U.S.C. § 3582(c)(1)(A)(ii).  Moreover, section 3582(c) creates other avenues for a sentence reduction.  See, e.g., id. § 3582(c)(1)(B); id. § 3582(c)(2).  None of these other avenues is implicated here.

compassionate-release statute to allow incarcerated individuals to file their own motions seeking compassionate release as long as they first apply to the BOP.[2] See id. § 603(b), 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A) (2018).  Saccoccia's motion was filed under this revised regime.

To grant a sentence reduction in response to a prisoner-initiated motion for compassionate release alleging "extraordinary and compelling reasons," a district court must make several findings.  First, the court must find both that the defendant has presented an "extraordinary and compelling reason" warranting a sentence reduction, 18 U.S.C. § 3582(c)(1)(A)(i), and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," id. § 3582(c)(1)(A).  Put another way, the district court must find that the defendant's situation constitutes the type of "extreme hardship" that the compassionate-release statute is designed to ameliorate.  United States v.

---

[2] Such motions are variously referred to as sentence-reduction motions and compassionate-release motions.  We use those terms interchangeably.  So, too, the court below interchangeably referred to Saccoccia's request as one for "release" and one for a "sentence reduction."  See Saccoccia II, 2020 WL 6153694, at *4.  Based on its use of the term "reduction," we conclude that the district court correctly understood that the compassionate-release statute contemplates any form of sentence reduction, including release.  See 18 U.S.C. § 3582(c)(1)(A) ("[T]he court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) . . . ." (emphasis supplied)).

- 6 -

Havener, 905 F.2d 3, 6 (1st Cir. 1990) (Breyer, J.).  It must also abide by any applicable policy guidance from the Sentencing Commission, which is required by statute to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t).[3]  Then, the court must consider any applicable section 3553(a) factors, see 18 U.S.C. § 3582(c)(1)(A), and "determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case."  Dillon v. United States, 560 U.S. 817, 827 (2010) (describing similar two-part inquiry for sentence reduction under section 3582(c)(2), a provision adjacent to section 3582(c)(1), employing similar language); see United States v. Vaughn, 806 F.3d 640, 643 (1st Cir. 2015) (same).

At both steps of this pavane, our standard of review is the same.  Recognizing that the compassionate-release statute provides that a district court's decision to grant or deny a

---

[3] The current policy guidance, United States Sentencing Commission, Guidelines Manual, §1B1.13 (Nov. 2018), provides that "[u]pon motion of the Director of the [BOP] under [section 3582(c)(1)(A)]," a court may grant relief, after considering the applicable factors listed at section 3553(a), when it finds both that "extraordinary and compelling reasons warrant the reduction" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Id. §1B1.13(1)(A), (2).  Section 1B1.13 also provides four categories of extraordinary and compelling reasons.  See id. §1B1.13 cmt. n.1(A)-(D).

compassionate-release motion is discretionary, see 18 U.S.C. § 3582(c)(1)(A), we review a district court's denial of a compassionate-release motion for abuse of discretion, see, e.g., United States v. Long, 997 F.3d 342, 352 (D.C. Cir. 2021); United States v. Pawlowski, 967 F.3d 327, 330 (3d Cir. 2020); cf. United States v. Concepcion, 991 F.3d 279, 292 (1st Cir. 2021) (reviewing denial of motion for resentencing under FSA for abuse of discretion); United States v. Rodríguez-Rosado, 909 F.3d 472, 479 (1st Cir. 2018) (reviewing denial of section 3582(c)(2) motion for abuse of discretion). This standard of review, however, is not monolithic. Under it, "we review the district court's answers to legal questions de novo, factual findings for clear error, and judgment calls with some deference to the district court's exercise of its discretion." Akebia Therapeutics, Inc. v. Azar, 976 F.3d 86, 92 (1st Cir. 2020).

**B**

Saccoccia's first argument posits that his poor physical health, in combination with his age (sixty-two at the time the district court ruled) and the ongoing COVID-19 pandemic, constitutes an extraordinary and compelling reason sufficient to ground his motion. He identifies two distinct aspects of his health: an amalgam of diagnosed chronic conditions (including hypertension and hyperlipidemia) and an elevated PSA level. The district court determined that Saccoccia's hypertension and

- 8 -

hyperlipidemia — the focus of his chronic health-related arguments — did not clear the high bar needed for showing an extraordinary and compelling reason to justify compassionate release. See Saccoccia II, 2020 WL 6153694, at *2. The court considered Saccoccia's proffered medical evidence but concluded that neither of these conditions was serious and that they did not comprise a unique risk for severe complications arising from COVID-19. The court found, for example, that Saccoccia did not suffer from pulmonary hypertension, identified by the Centers for Disease Control and Prevention (CDC) as particularly problematic in light of COVID-19's effects on the respiratory system. See id.

These findings are supported by the record, and we discern nothing resembling an abuse of discretion. See United States v. Aponte-Guzmán, 696 F.3d 157, 161 (1st Cir. 2012). Health concerns are not uncommon among people in their sixties, but not every complex of health concerns is sufficient to warrant compassionate release. This remains true even in the midst of the COVID-19 pandemic. The risk of severe illness from COVID-19 might in some cases justify compassionate release based on the criteria set forth in the Sentencing Commission's current policy guidance regarding a defendant's medical conditions and age, see USSG §1B1.13 cmt. n.1(A)-(B), but the district court, relying on then-current CDC guidance, reasonably determined that Saccoccia's

- 9 -

medical conditions did not establish any such vulnerability in his particular case.

Even apart from such criteria, words have significance. Words like "extraordinary" and "compelling," when used by Congress in framing a statute, must be given their plain meaning. See Robb Evans & Assocs. v. United States, 850 F.3d 24, 34 (1st Cir. 2017); United States v. Carroll, 105 F.3d 740, 744 (1st Cir. 1997). The district court's determination that Saccoccia's health concerns and the threat of COVID-19 did not add up to an extraordinary and compelling reason for a sentence reduction is also consistent, we think, with the plain meaning of the words that Congress chose to use.

Saccoccia trains more fire on the district court's rejection of his plea for compassionate release based on his elevated PSA level. In his view, the court should have treated that elevated PSA level as the functional equivalent of a showing of prostate cancer. Relatedly, he attacks, as legal error, the district court's categorical treatment of some of his health-related arguments — including, most notably, his prostate-cancer argument — as "not developed." Saccoccia II, 2020 WL 6153694, at *2 n.1. As a component of this attack, he intimates that the lack of a formal diagnosis should be disregarded because the BOP delayed confirmatory tests.

There is no doubt that Saccoccia properly raised arguments related to potential prostate cancer before the district court. In supplemental filings to his compassionate-release motion, Saccoccia included (among other things) medical records indicating that his PSA levels had increased from 2019 to 2020 and that such an increase warranted further testing for prostate cancer. But we understand the district court's treatment of Saccoccia's prostate-cancer argument as "not developed" to mean that — with only suggestive test results and in the absence of an actual diagnosis — Saccoccia could not meaningfully represent that he has prostate cancer. After all, an elevated PSA level is far removed from a definite indicator of prostate cancer.

To be sure, an elevated PSA level (especially when it represents a significant year-to-year rise) may indicate a need for further testing. Here, however, a myriad of other possible explanations exist for Saccoccia's test results. See U.S. Preventive Servs. Task Force, Recommendation Statement, Screening for Prostate Cancer, 319 JAMA 1901, 1902-03 (2018). This is particularly true given Saccoccia's chronic condition of benign hypertrophy of the prostate, which itself may produce an elevated PSA level. See id. So, too, Saccoccia is in his sixties, and aging itself is correlated with increased PSA levels. And in any event, Saccoccia was tested again in August of 2020 — this time by an outside lab — and that test yielded a PSA level lower than his

immediately preceding test.[4]  This uncertainty, which can be resolved to a large extent through further testing and consultation, affords a plausible basis for the district court's treatment of Saccoccia's prostate-cancer argument as "not developed" when presented to the court.

Our takeaway from the district court's treatment of Saccoccia's other health-related arguments, including his prostate-cancer argument, as "not developed," is reinforced by the fact that the court took pains to leave the door open for a future compassionate-release motion should subsequent medical developments warrant.  See Saccoccia II, 2020 WL 6153694, at *5 n.4.  If, say, Saccoccia were actually to be diagnosed as having prostate cancer, he could again move for compassionate release with that diagnosis in hand.[5]  At this early stage, though, the district court's refusal to accept Saccoccia's premature characterization of his condition as "prostate cancer" was well within the encincture of its discretion.

Saccoccia has a fallback position.  He suggests that the potential risk for prostate cancer is alone sufficient to justify

---

[4] Saccoccia's PSA level in March of 2020 was 9.76 ng/ml.  This marked an increase from his February 2019 PSA level, which was 4.69 ng/ml.  Upon subsequent testing, in August of 2020, Saccoccia was found to have a PSA level of 6.6 ng/ml.

[5] We do not mean to imply that a diagnosis of prostate cancer, standing alone, would justify compassionate release.  That would depend on a constellation of other factors, including the BOP's ability to treat such an illness within the federal prison system.

a finding of extraordinary and compelling reasons because the BOP has dragged its institutional feet with respect to further PSA testing. We accept the premise of Saccoccia's plaint: a district court may find the existence of an extraordinary and compelling reason sufficient to justify compassionate release based upon material BOP interference in or stonewalling of medical testing or treatment. See, e.g., United States v. Crowell, No. 16-107, 2020 WL 4734341, at *2 (D.R.I. Aug. 14, 2020). But we reject the conclusion that Saccoccia draws from this premise. The record in this case does not show either material interference or stonewalling on the BOP's part.

To the contrary, the record makes manifest that the BOP has been monitoring Saccoccia's prostate condition and has made reasonable efforts to ensure that he receives adequate medical care. During the eighteen-month period from February of 2019 to August of 2020, Saccoccia had no fewer than three PSA tests. See supra note 4. In addition, the BOP sought to schedule a urology consultation for July of 2020. The consultation had not yet taken place at the time (three months later) that the district court ruled on Saccoccia's motion. But this fact alone, in light of the BOP's efforts to monitor Saccoccia's prostate condition, does not evince undue delay.

To say more about Saccoccia's health-related concerns would be to paint the lily. The bottom line is that the district

- 13 -

court did not abuse its discretion in rejecting Saccoccia's claims that those concerns constituted an extraordinary and compelling reason warranting compassionate release.

## C

This brings us to Saccoccia's remaining argument. He contends that the length of his 660-year sentence, combined with his age, the duration of his confinement to date, and other circumstances, collectively comprise an extraordinary and compelling reason for compassionate release. This contention raises a number of subsidiary questions.

The first question is whether — as Saccoccia would have it — a district court may consider sentence length as an extraordinary and compelling reason for compassionate release. This question is nuanced, partially because the compassionate-release statute requires that a sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). In Dillon, the Supreme Court interpreted this language in the context of a different ground for a sentence modification under section 3582(c). See 560 U.S. at 826-27. The Court held that the phrase "consistent with applicable policy statements" rendered the Sentencing Commission's policy guidance binding upon courts mulling sentence-reduction motions. See id.

This holding presents a potential obstacle for Saccoccia: section 1B1.13 does not explicitly allow for length of sentence itself to serve as an extraordinary and compelling reason for release, though there is a catch-all category for "[o]ther [r]easons." See USSG §1B1.13 cmt. n.1(A)-(D) (providing four categories of extraordinary and compelling reasons: (A) medical reasons; (B) age; (C) family circumstances; and (D) "[o]ther [r]easons"). But there is a rub: the Sentencing Commission's current policy guidance predates the FSA. Since the Sentencing Commission has not had a quorum from the time that Congress enacted the FSA in 2018, it has not been in a position to provide updated guidance. The result is that section 1B1.13 addresses the compassionate release process as one instituted by motion of the BOP, including the requirement that the "[o]ther [r]easons" warranting relief must be "determined by the Director of the [BOP]." Id. cmt. n.1(D).

Against this backdrop, Saccoccia argues that courts confronted with prisoner-initiated motions for compassionate release are not bound by the Sentencing Commission's current policy guidance and so may decide for themselves what constitutes an extraordinary and compelling reason sufficient to justify compassionate release. This sort of argument — that section 1B1.13 is not an "applicable" policy statement constraining the courts — has been viewed approvingly by the overwhelming majority of the

- 15 -

courts of appeals that have passed on the issue. See, e.g., Long, 997 F.3d at 355; United States v. Aruda, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021); United States v. McCoy, 981 F.3d 271, 281 (4th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020); United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020). But see United States v. Bryant, 996 F.3d 1243, 1262 (11th Cir. 2021). We have not had occasion to resolve the issue, and we need not do so today. Cf. Privitera v. Curran (In re Curran), 855 F.3d 19, 22 (1st Cir. 2017) ("[C]ourts should not rush to decide unsettled issues when the exigencies of a particular case do not require such definitive measures."). Instead, we assume, for argument's sake, that a court adjudicating a prisoner-initiated motion for compassionate release may go beyond the confines of the Sentencing Commission's current policy guidance (at least while the Commission lacks a quorum) in determining whether a particular circumstance or set of circumstances constitutes an extraordinary and compelling reason to grant the motion.

This sets the stage for a second question. Even if we assume — as we have done — that the Sentencing Commission's current policy guidance is not binding in the circumstances of this case, the question remains whether length of sentence can constitute an extraordinary and compelling reason for compassionate release. Once again, we have the luxury of being able to defer the

resolution of a thorny question. The circumstances of this case permit us to leave this question unanswered and to assume, favorably to Saccoccia, that length of sentence may itself constitute an extraordinary and compelling reason for compassionate release.

The assumption that length of sentence, in the abstract, may be considered as an extraordinary and compelling reason for compassionate release is merely a starting point, not an end-point. That assumed fact serves as a gateway for a case-specific evaluation of the defendant's situation. See United States v. Harris, 989 F.3d 908, 912 (11th Cir. 2021). Here, the district court assumed that it had the authority to consider the sheer length of Saccoccia's sentence as an extraordinary and compelling reason for Saccoccia's compassionate release. See Saccoccia II, 2020 WL 6153694, at *3. It nonetheless concluded that the length of Saccoccia's sentence, even when viewed in conjunction with a variety of other considerations cited by Saccoccia, did not warrant his compassionate release. See id. at *3-4.

In reaching this conclusion, the court canvassed a number of different factors, including the length of Saccoccia's sentence, his claim that his sentence was disproportionate when viewed in light of the offenses of conviction, his claim that his sentence was unduly influenced by the then-mandatory nature of the sentencing guidelines, and his claim that his advanced age and the

- 17 -

length of time he already had served made recidivism unlikely and counselled in favor of his release. See id. at *2-3. Though the section 3553(a) factors may serve as an independent basis for a district court's decision to deny a compassionate-release motion and need only be addressed if the court finds an extraordinary and compelling reason favoring release, the court below went the extra mile: it wrapped the package and tied a bow on it by completing a section 3553(a) analysis. See id. at *4. It found the section 3553(a) factors inhospitable to Saccoccia's plea for compassionate release. See id.

We proceed to test the soundness of the district court's conclusions. The critical question, of course, is whether the district court abused its discretion in holding that Saccoccia's particular circumstances related to his sentence and the section 3553(a) factors, fell short of warranting his compassionate release. We find no such abuse.

A 660-year sentence, Saccoccia says, is "unfathomable." But in legal matters, as in life, "[e]verything depends on context." Rivera-Velásquez v. Hartford Steam Boiler Inspection & Ins. Co., 750 F.3d 1, 5 (1st Cir. 2014). Viewed in context, Saccoccia's 660-year sentence is readily comprehensible. Saccoccia holds a special place in the pantheon of money launderers, and his GSR was life imprisonment. See Saccoccia I, 58 F.3d at 786. The sentencing court, working with a total of

fifty-four counts and a series of relatively modest statutory maxima, imposed the statutory maximum sentence on each count and ran those sentences consecutively to effectuate a life sentence. See id. We affirmed that aggregate sentence on direct review, acknowledging the seriousness of Saccoccia's criminal activity. See id. at 789.

The district court reasonably determined that the passage of time — even in light of the changed legal landscape regarding the Sentencing Guidelines, see United States v. Booker, 543 U.S. 220, 245 (2005), and Saccoccia's other sentence-related arguments — did not render that lengthy sentence either unreasonable or incommensurate with the scope and gravity of Saccoccia's offenses. The basis for this conclusion is nose-on-the-face plain. The district court emphasized the seriousness of Saccoccia's offenses. See Saccoccia II, 2020 WL 6153694, at *3-4. Then — highlighting the other factors that it considered most telling — the court reviewed Saccoccia's criminal record, his age at the time of the offenses of conviction, and his obstruction of justice during his prosecution for money laundering. See id. at *3. Taking everything into account, the court rejected Saccoccia's bid for compassionate release based on sentence length. See id. at *3-4.[6] Relatedly, the court found that the section 3553(a)

---

[6] These considerations were framed by the district court as distinguishing features from the defendant in Brooker. See

- 19 -

factors, on balance, did not favor a sentence reduction.  See id. at *4.  It explained that granting Saccoccia's request would send the wrong message and marshalled case law supporting the proposition that a sentence reduction would both fail to account for the seriousness of the offenses of conviction and undercut the policy of promoting deterrence.  See id.

In calumnizing the district court's conclusions, Saccoccia seizes single-mindedly upon its statement that compassionate release "would send the wrong message both to [Saccoccia] and to society," id., as an indication that only a few factors were considered.  In his view, the court failed to consider certain mitigating factors, such as his alleged prostate cancer, the length of time already served, and alleged sentence disparities (including disparities arising when his sentence is compared to sentences imposed upon leaders of the drug cartel for whom Saccoccia laundered money).  But this is whistling past the graveyard.  The district court said that it exercised its broad discretion in denying compassionate release in light of the

---

Saccoccia II, 2020 WL 6153694, at *3.  Saccoccia argues that the district court improperly grafted the criteria used by the Second Circuit in Brooker onto his case.  Contrary to Saccoccia's importunings, the district court did not suggest that Saccoccia had to be held to the same criteria as the defendant in Brooker. Our understanding is that the district court looked to the Brooker decision in determining the type of factors to be considered when evaluating whether extraordinary and compelling reasons for a sentence reduction existed.  For that purpose, Brooker was an appropriate point of reference.

"balance" of the factors, id., and we have no reason not to take this statement at face value. No more was exigible: "[m]erely raising potentially mitigating factors does not guarantee" a favorable decision. United States v. Dávila-González, 595 F.3d 42, 49 (1st Cir. 2010).

Our case law is pellucid that a district court, when conducting a section 3553(a) analysis, need not tick off each and every factor in a mechanical sequence. See United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006) ("[I]t is not required to address those factors, one by one, in some sort of rote incantation when explicating its sentencing decision."). Instead, we presume — absent some contrary indication — that a sentencing court considered all the mitigating factors and that those not specifically mentioned were simply unpersuasive. See United States v. Martins, 413 F.3d 139, 154 (1st Cir. 2005).

This case law has evolved in the sentencing context proper, but we think that it applies with at least equal force in the compassionate-release context. Cf. Rodríguez-Rosado, 909 F.3d at 480 (applying similar proposition in analogous context of section 3582(c)(2) motion). The common denominator is, of course, the broad discretion afforded to the district court in evaluating motions for compassionate release, as in sentencing matters, and when weighing the section 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A) ("[T]he court . . . may reduce the term of

imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable."); cf. Aponte-Guzmán, 696 F.3d at 160-61 (explaining in the analogous section 3582(c)(2) context that sentence reductions are discretionary and not a matter of right).

Although Saccoccia argues that this court should require further explanation from a district court (particularly where, as here, the motion judge did not impose the defendant's sentence), we think compassionate release motions should not devolve into satellite sentencing hearings. The Supreme Court has explained that a sentence modification in the analogous section 3582(c)(2) context is "not a plenary resentencing proceeding." Chavez-Meza v. United States, 138 S. Ct. 1959, 1967 (2018) (quoting Dillon, 560 U.S. at 826). Relatedly, the Court has assumed for argument's sake that "district courts have equivalent duties when initially sentencing a defendant and when later modifying the sentence." Id. at 1965. Building on this foundation, the Court explained that, "[i]n some cases," as in the sentencing context, "it may be sufficient for purposes of appellate review that the judge simply relied upon the record, while making clear that he or she has considered the parties' arguments and taken account of the §3553(a) factors." Id. at 1965-67. Here, the district court presented its reasons (which do not reflect a failure to consider pertinent factors) and explicitly adopted those in the government's

- 22 -

briefing.  See Saccoccia II, 2020 WL 6153694, at *4.  These various reasons provide a sufficient basis for the district court's decision.  Our examination of the record reveals that the court below did not trespass — or even closely approach — the margins of its broad discretion in denying Saccoccia's motion.

### III

We need go no further.  For the reasons elucidated above, the judgment of the district court is

**Affirmed**.

- 23 -