# United States Court of Appeals
## For the First Circuit

No. 21-1034

UNITED STATES OF AMERICA,

Appellee,

v.

SAIEED JEAN TEXEIRA-NIEVES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch and Selya, Circuit Judges,
and McCafferty,* District Judge.

Eleonora C. Marranzini, Assistant Federal Public Defender, with whom Eric Alexander Vos, Federal Public Defender, Franco L. Pérez-Redondo, and Cherrelle Herbert, Assistant Federal Public Defenders, were on brief, for appellant.

Thomas F. Klumper, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

---

* Of the District of New Hampshire, sitting by designation.

January 12, 2022

**SELYA**, <u>Circuit Judge</u>. Defendant-appellant Saieed Jean Texeira-Nieves appeals the district court's denial of his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act (FSA), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018). Concluding, as we do, that the district court's order was within the ambit of its discretion, we affirm.

**I**

We briefly rehearse the relevant facts and travel of the case. In 2018, Puerto Rico police arrested the defendant during a traffic stop. He was driving a vehicle that contained a loaded gun, thirty-one additional rounds of ammunition, and a satchel of controlled substances. In an interview with federal agents, the defendant admitted that he possessed the controlled substances because he was in the business of selling drugs and that the firearm was there for protection.

In due course, the defendant was charged in a five-count federal indictment. He subsequently pleaded guilty to two counts: possession of a firearm in furtherance of a drug trafficking crime, <u>see</u> 18 U.S.C. § 924(c)(1)(A), and possession of controlled substances with the intent to distribute them, <u>see</u> 21 U.S.C. § 841(a)(1), (b)(1)(D).[1] The plea agreement confirmed that the

---

[1] The remaining counts were later dismissed as contemplated in the plea agreement.

firearms charge carried with it a mandatory minimum prison term of five years. With respect to the drug charge, the plea agreement noted that the guideline sentencing range was zero to six months of imprisonment. The probation department proceeded to prepare a presentence investigation report (PSI Report) that reflected the guideline calculations and ranges as adumbrated in the plea agreement.

The district court convened the disposition hearing in July of 2019. The court imposed a one day term of immurement on the drug count and a consecutive sixty-month sentence on the firearms count. The court also imposed concurrent terms of supervised release. The defendant did not appeal.[2] And according to calculations by the Bureau of Prisons (BOP) — the defendant is scheduled to be released on or about February 1, 2023.

The defendant, who is in his late twenties, has several pre-existing medical conditions, including sickle cell disease. His sickle cell anemia and complications stemming from that disorder were documented in the PSI Report. In June of 2020 — after the outbreak of the COVID-19 pandemic — the defendant submitted alternative requests to the warden of the correctional facility at which he was confined: he sought compassionate release

---

[2] Indeed, no appeal was permitted: the aggregate sentence was within the parameters limned in the plea agreement and, therefore, the waiver-of-appeal provision in the plea agreement pretermitted the defendant's right to appeal.

pursuant to section 3582(c)(1)(A) or, in the alternative, transfer to home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020). His requests referred not only to his sickle cell anemia, which — according to the Centers for Disease Control and Prevention — presents a significantly increased risk for severe illness from COVID-19, but also to other medical conditions (such as thalassemia). The defendant did not receive a response.

In October of 2020, the defendant moved for compassionate release pursuant to the compassionate-release statute. See 18 U.S.C. § 3582(c)(1)(A). In support, he argued that his heightened risk of complications stemming from COVID-19, given his pre-existing medical conditions, constituted an "extraordinary and compelling" reason warranting a sentence reduction. Id. § 3582(c)(1)(A)(i). He added that a reduction in his sentence and conversion of his remaining time to supervised release on home confinement would be a sufficient sentence in light of the applicable sentencing factors. The defendant also described the CARES Act and alleged certain considerations that might weigh in favor of transferring him to home confinement pursuant to that law. The government reasonably construed these arguments as an alternative request for home confinement.

In December of 2020, the district court denied the defendant's motion on the papers. In its order, the court stated that it adopted as its reasons for denial those provided by the government in its opposition and sur-reply memoranda. The court went on to state that the defendant had not demonstrated any extraordinary or compelling reason to grant his request for compassionate release, that the defendant was still a danger to the community, and that the court did not have the authority to order him to home confinement. This timely appeal followed.

**II**

Before granting a sentence reduction in response to a prisoner-initiated motion for compassionate release alleging extraordinary and compelling reasons, a district court must make three findings. The court must find both that the defendant has presented an "extraordinary and compelling" reason warranting a sentence reduction, 18 U.S.C. § 3582(c)(1)(A)(i), and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," id. § 3582(c)(1)(A). Next, the district court must consider any applicable section 3553(a) factors, see id., and "determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case," United States v. Saccoccia, 10 F.4th 1, 4 (1st Cir. 2021) (alteration in original) (quoting Dillon v. United States, 560 U.S. 817, 827 (2010)). The district

court is not required to address the section 3553(a) factors unless it finds in favor of the movant on the other issues. Our review is aided, though, when the district court takes the additional step of making a section 3553(a) determination. See United States v. Jones, 17 F.4th 371, 371 (2d Cir. 2021) (per curiam).

In this appeal, the defendant marshals three primary arguments. First, he contends that the district court unduly constrained the sweep of its discretion because it considered itself bound by the current policy statement issued by the Sentencing Commission. Second, he contends that the district court abused its discretion by failing to offer an adequate explanation for denying his motion. Third, he contends that the district court erroneously concluded that it did not have the legal authority to order him to serve the remainder of his sentence on home confinement. After pausing to address a threshold issue, we examine the defendant's trio of arguments one by one.

**A**

As an initial matter, the government asserts that the defendant's compassionate-release motion was improperly before the district court because the defendant failed to exhaust his administrative remedies. Section 3582(c)(1)(A) provides in relevant part that a defendant may move a district court for a sentence reduction "after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a

motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of [his] facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the government does not dispute that the defendant asked the BOP for a sentence reduction and waited the required amount of time before filing his motion in the district court. Instead, the government alleges that the facts and claims presented in the defendant's requests to the warden differ in some respects from those limned in his district court motion. These discrepancies, the government suggests, require a finding that the defendant did not properly exhaust his administrative remedies.

The question of whether and to what extent issue exhaustion applies to judicial review of compassionate-release motions is freighted with uncertainty — but we need not resolve that question today. Cf. Privitera v. Curran (In re Curran), 855 F.3d 19, 22 (1st Cir. 2017) ("[C]ourts should not rush to decide unsettled issues when the exigencies of a particular case do not require such definitive measures."). Rather, we assume, favorably to the defendant, that he has satisfied section 3582(c)(1)(A)'s administrative exhaustion requirement.

To be sure, some district courts have questioned whether the administrative exhaustion requirement for prisoner-initiated compassionate-release motions is jurisdictional. See, e.g., United States v. Guzman Soto, No. 18-10086, 2020 WL 1905323, at *3

(D. Mass. Apr. 17, 2020). If the administrative exhaustion requirement is of jurisdictional dimension, bypassing the issue may not be an available option. See Royal Siam Corp. v. Chertoff, 484 F.3d 139, 143 (1st Cir. 2007) (explaining that "a federal court ordinarily may not assume the existence of jurisdiction in order to decide the merits of a case or controversy"). In our judgment, however, this exhaustion requirement is not a jurisdictional limitation: as several circuits previously have held, it is a non-jurisdictional claim-processing rule. See United States v. Saladino, 7 F.4th 120, 123 (2d Cir. 2021) (per curiam) (collecting cases).

A rule is jurisdictional only if Congress has "clearly state[d] that a prescription counts as jurisdictional," and "when Congress does not rank a prescription as jurisdictional, courts should treat the restriction as nonjurisdictional in character." Fort Bend Cnty. v. Davis, 139 S. Ct. 1843, 1850 (2019) (quotations and alterations omitted). The administrative exhaustion requirement in section 3582(c)(1)(A) neither "speak[s] in jurisdictional terms" nor "refer[s] in any way to the [court's] jurisdiction." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1982); see Fort Bend, 139 S. Ct. at 1846, 1850. Thus, there is nothing resembling a jurisdictional defect here.

On the merits, the defendant's lead argument relates to the requirement of the compassionate-release statute that a reduction be "consistent" with "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Specifically, he argues that the district court mistakenly considered itself bound by this requirement. He bases this claim of error partially on the premise, not advanced below, that the current policy statement is not an "applicable" policy statement that should be regarded as binding a district court adjudicating a prisoner-initiated motion for compassionate release.

We have encountered this argument before, see Saccoccia, 10 F.4th at 7-8, and briefly trace its contours. The FSA amended the compassionate-release statute — which previously required such motions to be initiated by the BOP — to allow for prisoner-initiated motions. See Pub. L. No. 115-391, § 603(b), 132 Stat. at 5239. The current policy statement (section 1B1.13) was crafted by the Sentencing Commission before the passage of the FSA and addresses the compassionate-release process as one requiring a motion by the BOP. See USSG §1B1.13. The application notes to the policy statement also provide categories of extraordinary and compelling reasons, including a catch-all category of "[o]ther [r]easons" "[a]s determined by the Director of the Bureau of Prisons." Id. cmt. n.1(A)-(D) (delineating other categories

- 10 -

related to medical conditions, age, and family circumstances). The Sentencing Commission has not had a quorum from the time the FSA was passed and, therefore, has not been able to issue any revised guidance. See Saccoccia, 10 F.4th at 7. For this reason, the defendant says, the current policy statement is not an "applicable" policy statement that should be construed to bind a district court's consideration of a prisoner-initiated motion. The overwhelming majority of courts of appeals have adopted this view. See id. at 8 (collecting cases). But see United States v. Bryant, 996 F.3d 1243, 1262 (11th Cir. 2021) (determining that current policy statement is still an "applicable policy statement" for prisoner-initiated motions).

This issue — at least potentially — could have significant ramifications in other cases. For example, if the current policy statement does not apply, a district court is free (within the usual constraints of statutory construction) to craft its own definition of "extraordinary and compelling reasons." As another example, if the policy statement does not apply, a district court would not need to adhere to the policy statement's requirement that the court may grant compassionate release based on extraordinary and compelling reasons only if "the defendant is not a danger to the safety of any other person or to the

- 11 -

community."[3]  USSG §1B1.13(1)(A), (2).  With such ramifications in mind, we previously have found it prudent to refrain from resolving this issue when the circumstances of a particular case do not demand such a resolution.  See Saccoccia, 10 F.4th at 8.

We follow the same path today.  The defendant's qualms about the inapplicability of the policy statement were not raised below and, in any event, this case does not require that we decide the issue.  Even if we assume (favorably to the defendant) that the district court treated section 1B1.13 as mandatory and that, in so doing, it committed error (or even plain error), the defendant still would not prevail.  We explain briefly.

A defendant who demonstrates both that extraordinary and compelling reasons exist for a sentence reduction and that such a reduction is consistent with the applicable policy statement must clear yet another hurdle.  He must persuade the district court that the section 3553(a) factors weigh in favor of a sentence reduction.  See id. at 4 (explaining that court must consider

---

[3] The compassionate-release statute does not require a finding that a defendant is not a danger to the community in order to grant compassionate release based on an extraordinary and compelling reason.  See 18 U.S.C. § 3582(c)(1)(A)(i).  But the statute does require such a finding for compassionate release pursuant to section 3582(c)(1)(A)(ii), which allows a district court to reduce a sentence for some imprisoned persons at least seventy years of age, who have served at least thirty years.  See id. § 3582(c)(1)(A)(ii).  This statutory provision expressly requires a determination by the BOP that "the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."  Id.

sentencing factors and determine whether reduction is "warranted in whole or in part under the particular circumstances of the case" (quoting Dillon, 560 U.S. at 827)). These issues need not be considered in any particular order. See United States v. Jones, 980 F.3d 1098, 1116 (6th Cir. 2020) (Cook, J., concurring) ("No feature of [section] 3582(c)(1)(A) precludes a court from tackling the [section] 3553(a) factors first."). Thus, a district court's decision to deny compassionate release may be affirmed solely on the basis of its supportable determination that the section 3553(a) factors weigh against the granting of such relief. See, e.g., Ward v. United States, 11 F.4th 354, 360 (5th Cir. 2021); United States v. Ruffin, 978 F.3d 1000, 1008 (6th Cir. 2020); United States v. Pawlowski, 967 F.3d 327, 330-31 (3d Cir. 2020); United States v. Rodd, 966 F.3d 740, 747-48 (8th Cir. 2020). In other words, a supportable determination that the balance of the section 3553(a) factors weighs against a sentence reduction constitutes an independent reason to deny compassionate release. See United States v. Canales-Ramos, 19 F.4th 561, 569 n.4 (1st Cir. 2021); Saccoccia, 10 F.4th at 8; cf. United States v. Zayas-Ortiz, 808 F.3d 520, 523 (1st Cir. 2015) (noting that even when a defendant is eligible for a section 3582(c) sentence reduction, a district court may determine, based on the sentencing factors, that "a reduction would be inappropriate" (quotations omitted)).

This is such a case. The district court expressly found that the defendant remained a threat to the community and cited to section 3553(a). Its order also explicitly adopted "the reasons indicated by the United States in its opposition and sur-reply." These reasons included the government's position that the sentencing factors disfavored a sentence reduction and outweighed the defendant's medical concerns. Thus — assuming that the district court did not abuse its discretion in calibrating the section 3553(a) balance — there is no need for us to wade into the debate over the applicability of the current policy statement.

## C

This brings us to the district court's decision to deny the defendant's motion based on the section 3553(a) factors. We start with the elementary tenet that district courts possess significant discretion in evaluating motions for compassionate release. See Saccoccia, 10 F.4th at 4-5. Our review is solely for abuse of that discretion. See Canales-Ramos, 19 F.4th at 564; Saccoccia, 10 F.4th at 4-5. Under this respectful standard, "we review the district court's answers to legal questions de novo, factual findings for clear error, and judgment calls with some deference to the district court's exercise of its discretion." Akebia Therapeutics, Inc. v. Azar, 976 F.3d 86, 92 (1st Cir. 2020).

As relevant here, the compassionate-release statute provides that a district court "may" reduce a sentence "after

considering the factors set forth in section 3553(a) to the extent that they are applicable." See 18 U.S.C. § 3582(c)(1)(A). A district court's balancing of the section 3553(a) factors represents a quintessential judgment call and, therefore, falls into the last of the three buckets described in Akebia. See United States v. Santiago-Rivera, 744 F.3d 229, 232 (1st Cir. 2014). This makes perfect sense: the district court is "in a superior position to find facts and judge their import under [section] 3553(a) in the individual case." Gall v. United States, 552 U.S. 38, 51 (2007) (quotations omitted).

To permit appellate review, we must be able to discern to some extent a district court's reasoning. This does not mean, however, that the district court must spell out the reasons for denying a compassionate-release motion in granular detail. "The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." Rita v. United States, 551 U.S. 338, 356 (2007) (describing judicial opinion-writing generally). A short, concise statement usually will suffice. Cf. id. at 359 (concluding in the initial-sentencing context that a district court need not provide an extensive explanation for its sentencing decision when a "matter is conceptually simple" and the "record makes clear that [it] considered the evidence and arguments"). In some cases, the district court may simply state that it has considered the parties'

arguments and then rely on the record in making its determination. "The law leaves much, in this respect, to the judge's own professional judgment." Id.

In reviewing the imposition of a sentence, we consider the entire context and record. See Chavez-Meza v. United States, 138 S. Ct. 1959, 1967 (2018). So, too, we consider the entire context and record in determining whether a district court's denial of a compassionate-release motion allows for adequate appellate review. See Jones, 980 F.3d at 1112; cf. Chavez-Meza, 138 S. Ct. at 1967 (reviewing entire record in assessing sufficiency of district court's explanation for sentence-modification decision).

With this preface, we turn to a consideration of whether the district court abused its discretion in weighing the section 3553(a) factors. Section 3553(a) is "a tapestry of factors, through which runs the thread of an overarching principle." United States v. Rodríguez, 527 F.3d 221, 228 (1st Cir. 2008). This overarching principle directs courts to ensure that a sentence is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Even though this principle was fashioned for use in the initial-sentencing context, its spirit must guide a court tasked with considering the sentencing factors in light of any form of sentence-reduction motion (including a motion for compassionate release).

In effect, section 3553(a) "invite[s] the district court to consider, broadly," United States v. Politano, 522 F.3d 69, 74 (1st Cir. 2008), information relevant to the "nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a). It simultaneously invites the court to consider matters like "the need for the sentence imposed" to "reflect the seriousness of the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." Id.

Here, the context and record show that the district court gave due consideration to the section 3553(a) factors. It concluded — by adopting the government's arguments and reasons for denial of the defendant's compassionate-release motion — that the section 3553(a) factors did not weigh in favor of a sentence reduction. The reasoning for this conclusion can easily be discerned from the record, especially the parties' briefing and the court's order. See United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc), abrogated on other grounds by Rita, 551 U.S. 338 (explaining that a court's reasoning for its sentence can "often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did").

The district court cited to section 3553(a) immediately following its finding that the defendant posed a danger to the

- 17 -

community.  This signifies that the court considered the offenses of conviction and the defendant's history and characteristics — as outlined in the government's briefing and chronicled in the PSI Report — and that these data points informed the district court's consideration of the sentencing factors.  And we are confident that the district court also weighed its finding that the defendant continued to pose a danger to the community as part of its section 3553(a) analysis.  There would have been no reason for the district court to have cited those factors after its dangerousness finding unless the finding had relevance to that analysis.  The weight that we accord this reference seems especially appropriate given that the district court apparently adopted the government's view that it need not reach the sentencing factors if it considered dangerousness an absolute bar to relief under the policy statement.[4]

An additional factor helps to tilt the balance.  The defendant's compassionate-release motion was decided by the same judge who originally had sentenced him.  When imposing a sentence, a judge necessarily acquires an intimate knowledge of the offense of conviction and the history and characteristics of the offender.  See United States v. Aponte-Guzmán, 696 F.3d 157, 161 (1st Cir.

---

[4] We have no occasion to pass upon the propriety of relying on a finding of dangerousness alone as an independently sufficient reason to deny compassionate release pursuant to section 3582(c)(1)(A)(i).

2012) (affording "considerable measure of respect" to denial of sentence-reduction motion by judge who imposed original sentence and, thus, had "superior coign of vantage" and "hands-on familiarity with the case"). This reservoir of knowledge does not vanish into thin air when the judge later considers the offender's motion for compassionate release.

Given the facts and circumstances of this case, we cannot say that the district court abused its discretion in denying compassionate release based on the section 3553(a) factors. As the government argued below, the offenses were serious: the defendant — an admitted drug-peddler who carried a firearm to protect himself and his inventory — was arrested driving a car while in possession of a firearm loaded with eleven rounds of .40 caliber ammunition, several additional rounds of ammunition, and a satchel of drugs. What is more, the judge — after considering the defendant's history and characteristics — determined that the defendant continued to pose a danger to the community, and that finding was not clearly erroneous.

The defendant counters that there are other reasons the sentencing factors should weigh in favor of a sentence reduction. He points to the effect of the pandemic on the conditions of incarceration, which could not have been predicted at the time of sentencing. He also points to aspects of his history, health, and characteristics that, in his view, throw shade on the district

court's finding that he continues to pose a danger to the community. But the defendant's arguments, along with the relevant medical records and the PSI Report, were before the district court. And where, as here, the district court weighs the relevant considerations and makes a reasonable judgment call, deference is due to its determination. See Saccoccia, 10 F.4th at 9 (noting that "[m]erely raising potentially mitigating factors does not guarantee a favorable decision" (alteration in original) (quoting United States v. Dávila-González, 595 F.3d 42, 49 (1st Cir. 2010))); see also United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020) (explaining that the court of appeals "must accord significant deference to the [district] court's informed determination that the section 3553(a) factors justify the sentence imposed").

**D**

In a related vein, the defendant contends that the district court's sparse reasoning is itself an abuse of discretion. The fact that we have been able to review the district court's decision, see supra Part II(C), is a good indication that the district court's order is not so inscrutable as to constitute an abuse of discretion.

It is true, of course, that the district court's order contains only minimal reasoning. A fuller explication of the court's thinking would have been helpful. See Chavez-Meza, 138 S.

- 20 -

Ct. at 1967 ("Providing a more detailed statement of reasons often serves a salutary purpose separate and apart from facilitating appellate review." (quotations omitted)).  In the circumstances of this case, however, we deem the explanation adequate.

Critically, the district court's reasoning is illuminated by what the order says, by the briefing, and by the record as a whole.  Though the district court's minimalistic approach of merely adopting the government's reasons for denying compassionate release could conceivably be inadequate in some cases, cf. id. at 1967 (suggesting — with respect to motion for sentence reduction — that "district court's use of a bare bones form order," though sufficient based on circumstances at hand, might "be inadequate" in other cases), we think that such an approach was within the ambit of the court's discretion in this case.  As a denial of a sentence reduction by the same judge who shortly before had imposed the defendant's sentence, the consideration of the sentencing factors involved passing on much the same information as at the initial sentencing.  Any new considerations brought forward by the defendant were relatively uncomplicated matters.  Thus, we reject the defendant's contention that the explanation was so sparse as to constitute an abuse of discretion.

Finally, the defendant challenges the district court's conclusion that it lacked the authority to order home confinement. Because this challenge hinges on a question of law, our review is de novo. See Akebia Therapeutics, 976 F.3d at 92.

The compassionate-release provision contemplates any form of sentence reduction. See 18 U.S.C. § 3582(c)(1)(A) (providing generally that district court "may reduce the term of imprisonment"); see also Saccoccia, 10 F.4th at 4, n.2. In addition, the statute specifically provides that a district court may "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). Despite this wide sweep, though, the statute does not specifically grant a district court authority to change the site of a defendant's confinement. The statute's silence on this point comports with the BOP's "plenary control . . . over the place of the prisoner's imprisonment."[5] Tapia v. United States, 564 U.S. 319, 331 (2011) (quotations omitted).

---

[5] For the sake of completeness, we note that the CARES Act, passed in the wake of the COVID-19 pandemic, extended the period of home confinement that the BOP is statutorily authorized to order pursuant to section 3624(c)(2). See Pub. L. 116-136, § 12003(b)(2), 134 Stat. at 516.

We "must presume that a legislature says in a statute what it means and means in a statute what it says." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 8 (1st Cir. 2007) (quoting Barnhart v. Sigmon Coal Co., 534 U.S. 438, 461-62 (2002)). "Unless the statute means something other than what it says" — and we do not think that it does — "the absence of" any reference to modifying a defendant's location of confinement denotes that section 3582(c)(1)(A) does not afford a district court the authority to order a defendant to serve his unmodified sentence at home.

In an effort to make an end run around the statutory scheme, the defendant advances a different reading of the district court's ruling. To lay the groundwork for this alternate reading, the defendant notes that the district court could have reduced his sentence to a term of supervised release and ordered home confinement as a condition of supervised release. Building on this foundation, he says that the district court's ruling incorrectly assumed that the court did not have these powers. In other words, he suggests that the district court must have thought that it could not craft any sort of sentence modification incorporating home confinement even if it granted the compassionate-release motion.

This reading of the district court's ruling elevates hope over reason. In the proceedings below, both parties

acknowledged that the district court could reduce a sentence to time served, impose a term of supervised release equal to the unserved portion of the term, and order home confinement as a condition of supervised release. The district court flatly rejected this alternative: it concluded that no sentence reduction (let alone a reduction to time served) was warranted. Viewed against this backdrop, the purport of the district court's statement is clear as day: it believed that the duration of the defendant's sentence should not be modified and that the court lacked the authority to change his place of confinement.

The defendant has a fallback position. He argues that the district court could have recommended that the BOP place him in home confinement. But this argument was not advanced in the court below, and a party who has not asked for specific relief in the district court cannot secure that relief on appeal. See United States v. Adams, 971 F.3d 22, 37 (1st Cir. 2020) (applying "general rule that a party cannot ask the court of appeals for relief that he did not seek in the district court"); Beaulieu v. IRS, 865 F.2d 1351, 1352 (1st Cir. 1989) ("It is a party's first obligation to seek any relief that might fairly have been thought available in the district court before seeking it on appeal."). Consequently, we deem the argument waived.

## III

We need go no further.  For the reasons elucidated above, the judgment of the district court is

**<u>Affirmed</u>**.

**— Concurring Opinion Follows —**

**MCCAFFERTY**, <u>District Judge, concurring</u>.  I agree with the majority that the district court's decision can be affirmed based on the 18 U.S.C. § 3553(a) factors.  I write separately to express dismay that the government -- both before the district court and on appeal -- repeatedly attempted to call into question Texeira-Nieves's well-documented sickle cell anemia, with no apparent factual basis to do so.  The district court denied release in a short order citing "the reasons indicated" by the government.  The government did not deserve such wholesale deference.

The record was undisputed that Texeira-Nieves suffered from sickle cell anemia.[6]  First, Texeira-Nieves's Presentence Investigation Report ("PSR") included the names of two doctors who had treated him for sickle cell anemia.  One of the doctors certified that Texeira-Nieves had been her patient for several years, and records indicated that prior to his arrest, Texeira-Nieves saw her once a month for care related to his sickle cell disease.  Further, the PSR stated that in the two years prior to his arrest, Texeira-Nieves had been hospitalized twice for sickle cell anemia complications and had required blood transfusions and

---

[6] Sickle cell anemia is the most severe form of sickle cell disease, an umbrella term for a group of inherited red blood cell disorders. *Sickle Cell Disease (SCD)*, Centers for Disease Control and Prevention, https://www.cdc.gov/ncbddd/sicklecell/facts.html (last visited January 4, 2022).

intravenous medication.  It also indicated that he had been hospitalized more than 25 times since 2014, though it did not state specifically whether those hospitalizations were related to sickle cell disease.

In addition, Texeira-Nieves attached medical records from 2018 to his October 2020 compassionate release motion. These records stated that he had sickle cell anemia, and indicated that he was "stable on treatment" yet "chronically ill."  He also attached a declaration from a doctor who had not evaluated him specifically, but stated that, in general, preliminary data revealed that the COVID-19 mortality rate for those with sickle cell disease was twice that of the general population.

Despite this evidence, the government asserted in its opposition brief before the district court that the defendant "ha[d] not provided sufficient documentation or evidence that the asserted medical condition is currently active and seriously affecting his health," nor any evidence that his "ailments still exist today."  Given the chronic nature of sickle cell anemia (and, if there were any doubt, defendant's medical records indicated he was "chronically ill"), the government's assertions were spurious.

In response to the government's assertions, Texeira-Nieves attached additional medical records to his reply.  These records indicated that while incarcerated in October 2020, Texeira-Nieves "was found to be in sickle cell crisis" and was

admitted to an outside hospital.[7]  They also stated that while incarcerated he continued to take medication to treat his sickle cell disease.  In addition to his sickle cell symptoms, the records indicated that Texeira-Nieves needed hip surgery, experienced "debilitating pain," and suffered from various additional medical conditions.

Yet in the government's surreply, it again attempted to cast doubt on Texeira-Nieves's sickle cell anemia.  The government acknowledged that Texeira-Nieves had provided "some medical notes," but argued that the diagnoses in the medical records were based only on Texeira-Nieves's own reports, and that "there [were] no independent medical records corroborating Defendant's diagnoses and/or that he currently suffers [from] those medical conditions (except for hip pain)."  The government's repeated assertion that Texeira-Nieves did not suffer from sickle cell anemia was entirely unfounded.

Even on appeal, the government has not relented.  In its brief to this court, it asserts:

> As the government argued, and the district court agreed, Texeira failed to adequately support that he had a sickle cell disease condition.  He initially provided old medical

_____

[7] "Sickle cell crisis" refers to the periodic episodes of pain which are a major symptom of sickle cell anemia.  Severe sickle cell crises require hospitalization. *Sickle cell anemia*, The Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/sickle-cell-anemia/symptoms-causes/syc-20355876 (last visited January 4, 2022).

> notes, which these [sic] did not clearly indicate a clear diagnosis of sickle cell disease and reflected generally good health. (ASA 48). In a subsequent reply, Texeira provided additional medical records. (ASA 132). But the records again did not reflect a clear diagnosis of sickle cell disease. (Id.).

I am at a loss to understand how the government can argue in good faith that a PSR containing uncontroverted evidence of Texeira-Nieves's sickle cell anemia, combined with records from medical providers he saw while incarcerated that confirm the same, is not sufficient documentation of his chronic illness.

The district judge's order denying Texeira-Nieves's compassionate release motion stated that the motion was "DENIED, for the reasons indicated by the United States in its opposition and sur-reply." The order went on to state that "Defendant Texeira-Nieves ha[d] not shown any extraordinary or compelling reason to grant his request for compassionate release."

If this court were to reach the issue of extraordinary and compelling reasons, I would hold that the district court's finding that Texeira-Nieves did not present extraordinary and compelling reasons was premised on a clearly erroneous factual finding. The district court based its denial of release on the government's argument. The government's argument that Texeira-Nieves had not shown he suffered from sickle cell anemia is not only clearly erroneous based on reviewing the entire record, but it lacks any supporting evidence whatsoever. See Pullman-Standard

v. <u>Swift</u>, 456 U.S. 273, 284 n.14 (1982) (citation omitted) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.").  However, since the extraordinary and compelling reasons issue need not be reached in this case, I concur with the majority.