# United States Court of Appeals
## For the First Circuit

No. 24-1767

UNITED STATES OF AMERICA

Appellee,

v.

VÍCTOR MIGUEL DULUC-MÉNDEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Rikelman and Aframe, Circuit Judges,
and Elliott,* District Judge.

Robert Fitzgerald, with whom Rachel Brill, Federal Public
Defender, District of Puerto Rico, and Franco L. Pérez-Redondo,
Assistant Federal Public Defender, Supervisor, Appellate Unit,
were on brief, for appellant.

Emelina M. Agrait-Barreto, with whom W. Stephen Muldrow,
United States Attorney, and Mariana E. Bauzá-Almonte, Assistant
United States Attorney, Chief, Appellate Division, were on brief,
for appellee.

October 15, 2025

---

* Of the District of New Hampshire, sitting by designation.

**AFRAME**, <u>Circuit Judge</u>. After serving approximately half of his 240-month sentence for participating in a carjacking resulting in death, Víctor Miguel Duluc-Méndez (Duluc) moved for compassionate release to care for his ailing mother. <u>See</u> 18 U.S.C. § 3582(c)(1)(A). In his motion, Duluc detailed his mother's poor health, his siblings' inability to care for her, and his substantial post-conviction rehabilitation. The government filed an opposition, and the next day, the district court denied Duluc's motion in a brief order, concluding that relief was unwarranted because Duluc failed to demonstrate that his siblings were unable to care for his mother and his criminal record. The court did not mention Duluc's rehabilitation. We now vacate and remand because, on the present record, we cannot conclude that the court considered Duluc's rehabilitation-based arguments.

## I.

In 2013, Duluc and a juvenile took a car by force in a San Juan, Puerto Rico, public housing project. The pair detained the car's driver and traveled with him to an ATM, where Duluc used the driver's ATM card to withdraw $150. They then went to a rural area in the stolen car. Once there, the juvenile instructed the driver to inspect a flat tire. The driver complied, and the juvenile fatally shot him. The police stopped Duluc approximately two weeks later while driving the stolen car. He fled the scene but was apprehended the next day. Duluc admitted to the carjacking

- 2 -

but denied knowing that the juvenile was intending to shoot the driver.

Shortly thereafter, a grand jury indicted Duluc for participating in a carjacking with the intent to cause serious bodily injury or death, 18 U.S.C. §§ 2, 2119(3), and for using a firearm in furtherance of a crime of violence, id. §§ 2, 924(c), (j). In due course, Duluc pleaded guilty to the carjacking count, and the district court dismissed the firearm count. The government requested a 240-month sentence, which the court imposed.

In December 2023, after serving about ten years in prison, Duluc filed a pro se motion, explaining that he wished to seek compassionate release and requesting the appointment of counsel to assist him in doing so. The court appointed counsel, who filed a supplemental motion on Duluc's behalf in July 2024. In the supplemental motion, Duluc explained that his mother, who previously suffered from cardiovascular problems and arthritis, now also suffered from worsening dementia. According to Duluc, her new symptoms had left her unable to drive or follow complex conversations, which in turn had caused her to miss medical appointments, to forget to take her medications, and on several occasions, to become lost when trying to return to her home. Duluc related that, because of his mother's deteriorating condition, her doctor had advised that she "need[ed] assistance with her

- 3 -

activities of daily living." And he stated that none of his siblings could assist her, providing letters from three of them, in which each sibling explained that they were incapable of helping their mother because they did not live in Puerto Rico, did not have sufficient space for her to live with them, or had obligations or medical problems of their own that made them unable to provide the necessary care. A fourth sibling was estranged from Duluc's mother and, at the time of Duluc's motion, his mother did not know his whereabouts.

Duluc also detailed his substantial rehabilitation. He related that he had completed more than one thousand hours of rehabilitation programming offered by the Bureau of Prisons ("BOP"), had been entrusted with leadership positions in the facilities where he had been incarcerated, and had become a tutor and mentor to fellow prisoners. He included letters from several BOP employees recommending his early release, as well as letters from inmates describing Duluc's support for them. He also explained his religious development while in prison; in an attached letter, an assistant chaplain at Duluc's facility described Duluc as "the Christian leader to the [prison's] Hispanic community," "a vital part of chapel services," and "a great leader and man of faith." Duluc argued that this "extraordinary rehabilitation . . . further support[ed]" his release.

Finally, Duluc argued that his release would be consistent with the pertinent sentencing factors under title 18, section 3553(a). Again, he placed principal emphasis on his post-conviction rehabilitation, describing how he had "completed virtually every program offered" by the facilities in which he had been incarcerated, helped other prisoners graduate from high school, and assisted the chaplain in "teaching the Bible." His significant progress, he explained, demonstrated that he would not be a danger to the community, showed that deterrence and rehabilitation goals had been accomplished, and prepared him for successful release into society.

The government opposed Duluc's motion. It argued that Duluc had failed to show that he was the only available caregiver for his mother. It described the "non-specific reasons as to why [Duluc's] mother could not move to the mainland with his siblings or why any of [Duluc's] siblings cannot travel to Puerto Rico -- at least temporarily -- to provide care for their mother" as "commonplace concerns to all families with aging parents." Regarding Duluc's rehabilitation, the government asserted that "a defendant's rehabilitation alone does not warrant compassionate release," citing several decisions to that effect. The government did not specifically respond to Duluc's argument that the section 3553(a) sentencing factors favored release.

The day after the government filed its opposition, the district court denied Duluc's motion in a short order, reproduced in full below:

> Defendant Víctor Miguel Duluc-Méndez's [supplemental motion] is DENIED.
>
> [Duluc] has not demonstrated any extraordinary and compelling reason to grant him compassionate release. He argues that he is the only child who can take care of his ailing mother, but he has other siblings. The reasons he gives for his siblings not being able to take care of his mother are not convincing. They are commonplace concerns to all families with aging parents. 18 U.S.C. § 3582(c)(1)(A); USSG 1B1.13. In addition, his criminal record weighs against release. 18 U.S.C. § 3553(a).

Later that day, Duluc filed a motion for reconsideration. Duluc noted that the government had not challenged the evidence of his rehabilitation nor argued that the section 3553(a) factors favored further incarceration. He also asked the district court to reconsider its view about the inability of his siblings to care for his mother or, at a minimum, to hold an evidentiary hearing on the issue. The court denied Duluc's motion the following day without further explanation.

## II.

Subject to limited exceptions, a district court may not reduce a sentence that it has imposed. See 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) provides one such exception, permitting a district court to grant a defendant what is commonly known as

compassionate release.  See id. § 3582(c)(1)(A); United States v. Vega-Figueroa, 139 F.4th 77, 79 (1st Cir. 2025).  In pertinent part, section 3582(c)(1)(A) states that, "upon motion of the defendant," the court "may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

A compassionate-release motion thus presents a district court with "a multi-step inquiry."  United States v. Burgos-Montes, 142 F.4th 48, 57 (1st Cir. 2025).  First, the court must assess whether the defendant has set forth "extraordinary and compelling reasons" that warrant a sentence reduction, 18 U.S.C. § 3582(c)(1)(A)(i); next, it must ask whether the reduction "is consistent with the applicable policy statements issued by the Sentencing Commission."  Id. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13.[1]  "If the defendant is eligible for compassionate release

---

[1]    On November 1, 2023, the United States Sentencing Commission's policy statement on motions for compassionate release initiated by prisoners took effect.  See U.S.S.G. § 1B1.13. Previously, district courts had broad discretion that was "unconstrained by any policy statement currently in effect[] to consider whether a prisoner's particular reasons [were] sufficiently extraordinary and compelling to warrant compassionate release."  United States v. Ruvalcaba, 26 F.4th 14, 23 (1st Cir. 2022).  That is no longer the case for motions, such as this one,

- 7 -

under these two criteria," the court must then consider "the relevant [section] 3553(a) sentencing factors" and determine whether, "in its discretion" and "under the particular circumstances of the case," the reduction is warranted. Burgos-Montes, 142 F.4th at 57 (quoting United States v. Saccoccia, 10 F.4th 1, 4 (1st Cir. 2021)). A district court may grant compassionate release only if the defendant satisfies each of these steps. See United States v. D'Angelo, 110 F.4th 42, 48 (1st Cir. 2024).

We review the denial of a compassionate-release motion for abuse of discretion. See Saccoccia, 10 F.4th at 4. Under that standard, we review "legal questions de novo, factual findings for clear error, and judgment calls with some deference to the district court's exercise of discretion." Id. at 5 (quoting Akebia Therapeutics, Inc. v. Azar, 976 F.3d 86, 92 (1st Cir. 2020)).

Duluc contends that the district court made an error of law, and thereby abused its discretion, when it failed to consider his argument that his post-conviction rehabilitation combined with his family circumstances amounted to an "extraordinary and compelling reason" supporting release under the statute and the Sentencing Commission's policy statement. Separately, but in a

_____

that were filed after the relevant policy statement went into effect. See United States v. Gonzalez, 68 F.4th 699, 704 n.2 (1st Cir. 2023).

- 8 -

similar vein, he asserts that the court also abused its discretion by failing to consider his post-conviction rehabilitation in its analysis of the section 3553(a) factors. We address Duluc's arguments in turn.[2]

**A.**

We begin with Duluc's claim that the district court failed to consider his argument that his mother's declining health and his siblings' inability to care for her, combined with his substantial post-conviction rehabilitation, provided the "extraordinary and compelling reasons" necessary to reduce his sentence under the compassionate-release statute, 18 U.S.C. § 3582(c)(1)(A), and the Sentencing Commission's applicable policy statement, U.S.S.G. § 1B1.13.

Applying the prescribed "multi-step inquiry," Burgos-Montes, 142 F.4th at 57, we first address whether the defendant has set forth "extraordinary and compelling reasons" under section 3582(c)(1)(a). In considering a motion for compassionate release under this section, we have instructed district courts to conduct a "holistic" inquiry, United States v. Gonzalez, 68 F.4th 699, 700 (1st Cir. 2023), "consider[ing] any complex of circumstances raised by a defendant as forming an

---

[2] Duluc also contends that the district court erred in concluding that he was not his mother's only available caregiver. For reasons we will explain, we do not reach this argument because of our disposition of his other two contentions.

extraordinary and compelling reason warranting relief," D'Angelo, 110 F.4th at 48 (quoting Ruvalcaba, 26 F.4th at 28). The statute precludes "rehabilitation alone" from serving as "an extraordinary and compelling reason for compassionate release," United States v. Sepulveda, 34 F.4th 71, 76-77 (1st Cir. 2022); see 28 U.S.C. § 994(t). But that limitation does not stop a defendant from combining rehabilitation with other factors to establish an extraordinary and compelling reason. See United States v. Trenkler, 47 F.4th 42, 48 (1st Cir. 2022) (differentiating between what can be "considered in an 'extraordinary and compelling' determination" and what itself can "qualify as extraordinary and compelling" (emphasis omitted)); Gonzalez, 68 F.4th at 704-05 (similar); see also United States v. Davis, 99 F.4th 647, 659 (4th Cir. 2024) ("While Congress did specify that rehabilitation alone cannot be considered an extraordinary and compelling reason for release, it may be considered as one factor among several under [section] 3582(c)(1)(A).").

The Sentencing Commission's policy statement for compassionate-release motions takes a similar approach. See U.S.S.G. § 1B1.13. Section 1B1.13 permits "rehabilitation of the defendant while serving the sentence [to] be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d) (emphasis added). Among the

- 10 -

"other circumstances," id., the policy statement specifically identifies the "[f]amily [c]ircumstances of the [d]efendant," id. at § 1B1.13(b)(3).

Because Duluc's combination argument was cognizable under section 3582(c)(1)(A) and section 1B1.13 of the sentencing guidelines and was also supported by evidence of his rehabilitation and his mother's serious medical condition, the district court was obligated to consider it. Concepcion v. United States, 597 U.S. 481, 487 (2022) ("[D]istrict courts are always obligated to consider nonfrivolous arguments presented by the parties."); see Davis, 99 F.4th at 659 (concluding that the district court "abused its discretion in overlooking [the defendant's] evidence of rehabilitation" when considering whether the defendant established an extraordinary and compelling reason for compassionate release). Yet, the order denying Duluc's compassionate-release motion did not acknowledge Duluc's combination argument or otherwise suggest that the court had evaluated its merits. Rather, the order addressed -- and found wanting -- Duluc's family circumstances, which were just one part of his combination argument.

The government argues that we may infer that the district court implicitly rejected Duluc's combination argument. See United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc) (observing that "a court's reasoning can often be inferred by comparing what was argued by the parties . . . with

- 11 -

what the judge did"). To do so, the government seizes on the last sentence of its opposition to Duluc's supplemental motion, which urged that Duluc's arguments be rejected "both individually and as a whole." The government posits that the court, in essentially adopting the government's position, implicitly rejected the combination argument.

The problem for the government, however, is that this sentence, read in full, asked the court to reject Duluc's arguments specifically "[f]or the reasons" presented in the government's opposition. And the government nowhere addressed Duluc's argument that his family circumstances and rehabilitation combined amounted to an extraordinary and compelling circumstance. Rather, the government asserted that "a defendant's rehabilitation alone does not warrant compassionate release" (emphasis added). That is a correct statement of law, see 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d), but one that is non-responsive to Duluc's combination argument.

The record in this case, like the district court's order, does not suggest that the court appreciated and considered Duluc's combination argument. The close resemblance between the court's reasoning and some of the government's arguments causes concern that the court, like the government, overlooked the combination argument or believed that it was unavailable as a matter of law. Cf. United States v. Cruz-Rivera, 137 F.4th 25, 32-33 (1st Cir.

- 12 -

2025) (noting "concern" that the government's arguments may have caused the district court to misunderstand applicable precedent).

Our concern on this point is amplified by three additional considerations. First, the district court denied Duluc's motion without a hearing and before he could file a reply, meaning that Duluc had no opportunity to draw the matter to the court's attention, and the government had no opportunity to clarify or elaborate upon its position. Second, Duluc's combination argument was nuanced and somewhat novel: None of our prior decisions squarely addressed the combination issue presented here, and the policy statement expressly permitting Duluc's combination argument based on rehabilitation became effective only a month before Duluc filed his motion. See U.S.S.G., App. C Supp., amend. 814 (Nov. 1, 2023). Finally, given that Duluc's combination argument was the centerpiece of his motion, we expect that the court would have addressed the argument if the court had appreciated it.

We express no view on the merits of Duluc's combination argument. Nor do we address the district court's conclusion that Duluc's family circumstances were "commonplace" and therefore insufficient, which the government advances as an alternative basis for affirmance. Whether Duluc made a sufficient showing about his family circumstances depends, in part, on how convincing the district court found the other aspect of his proposed

combination, i.e., his rehabilitation.[3] And on this record, it is "impossible to determine" whether the district court considered that part of Duluc's argument. Cruz-Rivera, 137 F.4th at 33 (quoting United States v. Mendez, 802 F.3d 93, 98 (1st Cir. 2015)). Because this uncertainty renders abuse-of-discretion review of the first two aspects of the compassionate-release inquiry "unworkable," we must remand unless we may affirm the denial of Duluc's motion based on the third aspect of the inquiry, the section 3553(a) factors. See id. (quoting Mendez, 802 F.3d at 98).

**B.**

As mentioned earlier, even where a defendant demonstrates an extraordinary and compelling reason for a sentence reduction that is consistent with the Sentencing Commission's policy statement, the district court may still deny relief based on the pertinent section 3553(a) sentencing factors. See 18 U.S.C. § 3582(c)(1)(A); United States v. Texeira-Nieves, 23 F.4th 48, 55 (1st Cir. 2022). Here, the court based its denial of Duluc's motion in part on section 3553(a) considerations, citing the statute and stating that Duluc's "criminal record weigh[ed]

---

[3] For similar reasons, we do not address the government's argument, advanced for the first time on appeal, that Duluc's mother is not incapacitated as the word is used in section 1B1.13.

against release." Duluc argues that this analysis, which did not mention his rehabilitation, was inadequate.

"[T]he same ground rules" that govern the district court's consideration of the section 3553(a) factors in the context of sentencing "[g]enerally . . . apply" to compassionate-release motions. D'Angelo, 110 F.4th at 49; see Texeira-Nieves, 23 F.4th at 55-56. This means that although the "district court, when conducting a section 3553(a) analysis, need not tick off each and every factor in a mechanical sequence," Saccoccia, 10 F.4th at 10, or address every argument that a party advances, it must provide enough explanation for us to be able to "'discern to some extent [its] reasoning' for why it ruled as it did," D'Angelo, 110 F.4th at 49 (quoting Texeira-Nieves, 23 F.4th at 55-56). In doing so, the court "cannot 'completely ignore[]' a party's central argument." United States v. Flores-Nater, 144 F.4th 56, 64 (1st Cir. 2025) (alteration in original) (quoting United States v. Colón-Cordero, 91 F.4th 41, 55 (1st Cir. 2024)).

Duluc's post-conviction rehabilitation was his central section 3553(a) argument. Duluc explained in his supplemental motion that "[r]ehabilitation goals [were] fully consistent with a reduction," noting that he "ha[d] completed virtually every program offered, sometimes more than once," and "worked his way to a top position in the food department, earning the trust of the facility and staff." To the same end, he related how "[h]is

- 15 -

exceptional engagement with programming [had] led him to become a mentor, indispensable to the facility's academic and religious curriculum," and how "[h]e ha[d] helped other prisoners graduate from high school and assisted the chaplain in teaching the Bible." Duluc also featured his rehabilitation in discussing the other sentencing factors, such as the absence of risk that he posed to the community, his ability to comply with supervision, and the lack of necessity for further deterrence. Duluc's rehabilitation, in sum, was the dominant theme of his section 3553(a) argument.

The district court's order, however, did not mention Duluc's rehabilitation and stated only that Duluc's "criminal record weigh[ed] against release."[4] Although Duluc's criminal record was relevant to multiple section 3553(a) factors -- including the need for the sentence to reflect the seriousness of the offense and to protect the public from further crimes of the defendant, see 18 U.S.C. § 3553(a)(2) -- Duluc's key argument was, as already mentioned, that his criminal conduct had been mitigated by his post-sentencing rehabilitation. Whether that is so is a judgment call, but we cannot conclude that the district court exercised that judgment where its order contained

---

[4] Duluc interprets the district court's reference to his "criminal record" to refer only to two misdemeanors that predated the crime for which he is presently incarcerated. We think it is fairly inferred, however, that the court considered Duluc's most recent conviction, for which he has served over a decade in prison, to be part of his "criminal record."

no mention of Duluc's rehabilitation and there is no other indication that the court had considered the argument.

We recognize that the judge who denied Duluc's compassionate release motion was also Duluc's sentencing judge. In such cases, a less detailed analysis of the section 3553(a) factors may be enough because the sentencing judge "necessarily acquires an intimate knowledge of the offense of conviction and the history and characteristics of the offender . . . [that] does not vanish into thin air when the judge later considers the offender's motion for compassionate release." Texeira-Nieves, 23 F.4th at 57.

Here, however, Duluc's section 3553(a) argument centered on a factor -- namely, his post-conviction rehabilitation -- that came about after the district court sentenced him. His essential argument below, as here, is that he has fundamentally changed during the more than a decade that he has spent in prison, and that this change should be accounted for when weighing the section 3553(a) considerations. Duluc's showing on this score was strong enough that it warranted a response. See Davis, 99 F.4th at 661 ("[A]lthough [the defendant's] judge was also the sentencing judge, the ten-year gap between proceedings . . . allowed for both foreseeable and unforeseeable changes in circumstances during the interim. This possibility strengthens the argument that the judge needed to offer more than a mere recitation of [the defendant's]

original criminal behavior" in analyzing the section 3553(a) factors). Remand is therefore necessary for the district court to consider and address Duluc's rehabilitation in its section 3553(a) analysis.

## C.

We address one final point. Duluc asks not only for a remand to consider rehabilitation evidence but also that we order that his motion be granted. We decline that request. As we have previously explained, compassionate-release rulings are discretionary and "the allocation of functions between trial and appellate courts strongly suggests that the district court" should ordinarily "be afforded the opportunity to apply [the compassionate-release] standard in the first instance." United States v. Quirós-Morales, 83 F.4th 79, 86 (1st Cir. 2023). Several aspects of this case -- including our uncertainty over whether the district court properly considered Duluc's combination argument; our inability to ascertain whether the district court evaluated the effect of Duluc's rehabilitation in its section 3553(a) analysis; and the time that has passed since Duluc filed his supplemental motion, during which his family circumstances may have changed -- make remand particularly prudent. There may be rare instances where granting compassionate release is the only possible outcome, "[b]ut before we put this case into that category, [we should] allow the district court to consider the

full record under the proper framework." Id. at 87 (second alteration in original) (quoting United States v. Malone, 57 F.4th 167, 178 (4th Cir. 2023) (Harris, J., concurring in part)). We are remanding for that purpose.

## III.

For the reasons stated, we **vacate** the district court's order denying compassionate release and **remand** for further proceedings consistent with this opinion.