# United States Court of Appeals
## For the First Circuit

No. 24-1233

UNITED STATES OF AMERICA,

Appellee,

v.

NELSON MEDINA-ORTIZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Franciso A. Besosa, U.S. District Judge]

Before

Aframe, Hamilton,* and Thompson,
Circuit Judges.

Mariángela Tirado-Vales, for appellant.

Julia M. Meconiates, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate
Division, were on brief, for appellee.

---

* Of the United States Court of Appeals for the Seventh
Circuit, sitting by designation.

November 24, 2025

**THOMPSON**, <u>Circuit Judge</u>.

**Setup**

Caught in an FBI sting with agents posing as a 14-year-old girl, Nelson Medina-Ortiz watched a jury convict him of attempted transportation of a minor for criminal sexual activity, <u>see</u> 18 U.S.C. § 2423(a), but acquit him of attempted sexual enticement of a minor, <u>see</u> 18 U.S.C. § 2422(b). And he appeals.

The only issue for us on *de novo* review is whether the district judge needed to instruct the jury on an entrapment defense. <u>See, e.g.</u>, <u>United States</u> v. <u>Dávila-Nieves</u>, 670 F.3d 1, 9 (1st Cir. 2012) (spotlighting the standard of review). To win, Medina (as we'll now call him, per Spanish-naming norms) must show that the judge wrongly ruled that he hadn't met his "modest" threshold burden of highlighting evidence *both* that the FBI induced the crime *and* that he wasn't predisposed to commit it. <u>See</u> <u>United States</u> v. <u>Shinderman</u>, 515 F.3d 5, 14 (1st Cir. 2008) (adding that a court must "[t]ak[e] th[e] evidence in the light most flattering to the defendant").[1] Another way of saying this is that his failing

---

[1] "[E]ntrapment," to quote the esteemed Judge Posner, "means the government's inducing a person to commit a crime who was not predisposed to commit it — in other words, who would not have committed it but for the particular inducement that the government held out." <u>United States</u> v. <u>Manzella</u>, 791 F.2d 1263, 1269 (7th Cir. 1986). "[I]f the inducement," he continued,

> merely affects the timing of the offense — inducing the criminal to commit it at a time and in a place where the government can easily apprehend him and make a case

to establish either inducement or predisposition is fatal to this appeal.  See, e.g., United States v. Ramos-Paulino, 488 F.3d 459, 462 n.1 (1st Cir. 2007).

Agreeing with the government that his inducement arguments fall short, we let Medina's conviction stand.  And because his case is straightforward, we cut straight to the merits (offering further details as needed to place this appeal into workable perspective).

**Arguments and Analysis**

Spanning just a few sentences in his brief's argument section, Medina's theory that the government induced him to break

---

against him — punishing the criminal will, or at least may, reduce the crime rate, by taking out of circulation a person who, had he not been caught, would have committed the same crime, only in different circumstances, making it harder to catch him.

Id.  "But," Judge Posner said,

if the inducement was so great that it tempted the person to commit a crime that he would not otherwise have committed, punishing him will not reduce the crime rate; it will merely deflect law enforcement into the sterile channel of causing criminal activity and then prosecuting the same activity.

Id.  We can't put it better ourselves.

the law goes like this (using an easy-to-read bullet-point format):[2]

- Impersonating a minor named "Rolianas" (we adopt the parties' spelling), an agent "started the online communications" by posting an ad on Craigslist's casual encounters page titled "Bored - w4m" (w4m means women for men, the agent explained at trial).[3]  In the ad's body, the agent wrote "On Spring break in PR.  What's gud?  Been boring so far! . . .  looking for fun.  Ideas??"[4]

- The agent then plunged "dogged[ly]" ahead, "playing" with Medina by pushing "him to volunteer more activities" he thought the two could do beyond his suggestions of "going to the movies, eating, the beach," or driving around.

- And the agent's coaxing him to reveal other "fun" things he might be looking for qualifies as a "plus factor" that signals inducement.  See, e.g., United States v. O'Donovan, 126 F.4th 17, 40 (1st Cir. 2025) (noting that simply "providing an opportunity to commit a crime is not improper

---

[2] Medina filed no reply brief, by the way.

[3] We put scare quotes around "Rolianas" — and around "she" and "her" (pronouns the parties use in referring to "Rolianas") — because "she" isn't a real person.

[4] The relevant materials are full of typos, missing words, and other grammatical or syntactical errors.  We quote them as-is.

inducement, although proof of opportunity plus something else may be adequate to meet a defendant's burden to prove inducement" (quoting United States v. Saemisch, 18 F.4th 50, 61 (1st Cir. 2021))); see also United States v. González-Pérez, 778 F.3d 3, 11 (1st Cir. 2015) (saying that "'plus' factor[s] include 'excessive pressure'" (quoting United States v. Guevara, 706 F.3d 38, 46 (1st Cir. 2013)))).

Call us unconvinced.

**1**

Medina's theory ignores some hard realities, as the below-sampling of eight days' worth of emails, texts, and phone calls between him and "Rolianas" shows.

**i**

Responding to the agent's ad, Medina emailed "Rolianas" a photo of himself (the agent had posted the ad on Craigslist's casual-encounters section because predators go there to "exploit minors"). "nice pic!!!! where r u?" the agent emailed back the next day. Medina replied the same day that he was in "Humacao PR" and could "go wherever you wanted me to go." "I am 14yo," the agent answered that same day too. "Is that okay?" to which Medina wrote that very day that he doesn't "go out with minors."

This wasn't the end, however. Far from it. Medina messaged "Rolianas" "Hi" a couple hours later. After the agent replied "Hi" the next day, Medina asked "Rolianas" "what you doing

- 6 -

tonight?" "I'm out with my parents right now," the agent responded. Two days after that, Medina sent a "Hi bb how are you are you busy??" email to "Rolianas" ("bb" is slang for "baby," according to the agent's testimony). "Nope!" the agent wrote back. "How r u? Email sux. Wanna text me?" Answering the next day, Medina wrote "I'm bore can I go pick u up??" "Give me your # so I be able to text you girl."

## ii

So the two switched to texting. And Medina made it quite clear what he really wanted.

After only a few minutes of texting, Medina sent "Rolianas" a photo of a female lying on a bed in a short dress that left her buttocks (which faced the viewer) partly exposed. One can't tell whether she's wearing underwear. Even Medina recognizes on appeal that the photo is sexual in nature. Moments later, Medina texted "Rolianas" a shirtless photo of himself.

And not for nothing, but Medina's photo-sending provides key context for understanding his next messages. Read on and you'll see.

After "Rolianas" again texted that "she" was "14" — in response to his asking "How old are you??" — Medina typed "Are you having fun jet??" "the days are fun but night is boring" the agent replied. Which led to these exchanges:

**Medina:** What you really wanted to do??

**Agent:**    im lookin 2 have fun

**Agent:**    what do U want 2 do?

**Medina:**   How late your parents allowed you in?

**Agent:**    if they go 2 casino 2morrow tbey will b out late

**Medina:**   If you wanted I go pick you up??

**Agent:**    what would we do 2gether?

**Agent:**    id like that where would we

**Medina:**   We can go to movies, eating, and to the [beach emojis] beach

**Medina:**   Or cruising in my Polaris

**Agent:**    fun! and what else?....

**Medina:**   I don't think I wanted you to have any alcohol

**Agent:**    y not?

**Medina:**   I don't want to get any trouble and I don't wanted anything bad to happen to you

**Medina:**   I'll treat you like my daughter

**Agent:**    y would we get into trouble?

**Medina:**   By you getting drunk

**Agent:**    i already have a daddy

**Medina:**   I mean with respect

**Agent:**    that's why i posted the ad

**Agent:**      im tired of high school boys treating me like shit

**Agent:**      looking 4 someone mature

**Agent:**      no better time than on vacation away from home lol

**Medina:**     Well I'm willing to go and meet and if you want we go out and try having some fun

**Agent:**      i will only b able 2 go out at night when my parents are out

**Agent:**      what would we do?

**Medina:**     We could go cruising to show you around and you decide from there

There's more:

**Agent:**      but i kno my parents r going to the casino tmrrw nite

**Medina:**     Let me know what you wanted me to do

**Medina:**     [eye emojis]

**Agent:**      lol ur the one with all the experience!!! I dont have much experience :(

**Nelson:**     What are you doing this to me girl [confused face emojis]

**Agent:**      lol

**Medina:**     You so bad

**Agent:**      am I???????

**Medina:**     Yes you are

**Medina:**     You like bubbles ???

| | |
|---|---|
| **Agent:** | obvi who doesnt?? |
| **Agent:** | thats a funny question |
| **Medina:** | Jacuzzi |
| **Agent:** | ahhhh i c |
| **Agent:** | LUV jacuzzis |
| **Medina:** | Yes |
| **Medina:** | I treat you to |
| **Agent:** | where? |
| **Medina:** | It's a lots of them |
| **Agent:** | it would have 2 be close 2 my hotel |

There's more still:

| | |
|---|---|
| **Agent:** | i keep thinking about that hotel room[5] |
| **Medina:** | You really want to go over?? |
| **Agent:** | do u???? |
| **Medina:** | Don't ask me twice lol |
| | [. . .] |
| **Agent:** | if we go 2 hotel what would i need 2 bring? |
| **Medina:** | Nothing really unless you want to bring your swimming suit |
| **Agent:** | do i need it for the jacuzzi? |
| **Medina:** | If you want to that's up to you |

---

[5] Medina had sent "Rolianis" photos of a hotel bedroom and a heart-shaped jacuzzi filled with bubbles.

**Agent:**    i want u 2 tell me what 2 do :)

**Medina:**   You got my heart beating fast
              again

                   [. . .]

**Medina:**   Do you have any fantasy's you like
              to fulfill??

**Agent:**    i told you im inexperience

**Agent:**    was hoping u had ideas???

**Medina:**   I don't really want to text overhear
              it's not right,my get us in trouble

**Agent:**    Don't you think??

**Medina:**   I don't really know who's over the
              other side...!

**Agent:**    its jus me!!

                   [. . .]

**Medina:**   You know something??

**Agent:**    what?

**Medina:**   You got me all [water droplet emojis
              and umbrella emoji][6]

**Agent:**    lol

**Medina:**   It's not funny

**Agent:**    im sry

**Medina:**   Are you really going??

**Medina:**   Or you just playing with my mind????

---

[6] The agent testified that these emojis signify sexual arousal
and fluids.

| | |
|---|---|
| **Agent:** | r u realy coming??? |
| **Medina:** | Yes girl I told you I'm living early so I be there when you tell me |
| **Medina:** | I asked God to forgive me but at the same time I thanks him for sending you my way I was stressing for real I needed something like this to happen HE knows how to do things when they needed to be done |
| **Agent:** | i dont play games or wit minds |
| **Agent:** | thats why i hate high school boys |

There's even more:

| | |
|---|---|
| **Agent:** | ru safe? |
| **Medina:** | Yes definitely |
| **Agent:** | bc i am inexperienced and don't want 2 get sick |
| **Medina:** | Bb trust me I'm not like that ,safe first before anything I been around too long...! |
| **Agent:** | ok good |
| **Agent:** | how will we b safe? |
| **Medina:** | Not doing anything wrong |
| **Agent:** | will it hurt? |
| **Medina:** | What are you talking about I don't understand?? |
| | [. . .] |
| **Agent:** | ru big????? |
| **Medina:** | Gess what a Mexican girl told me one time?? |

Agent:          what????

Medina:         That Spanish gays don't have
                anything to envy off black guys

                    [. . .]

Agent:          thats why i worry about it hurting
                lol

Medina:         My [tongue emojis] won't hurt lol

And there's even more still:

Agent:          im just nrvous bc i kno a lot of
                guys try weird shit

Medina:         I won't tried mnothing but to please
                you

Agent:          u said u were safe ... would u be
                able to bring condoms???

Medina:         Yes

Agent:          ok

                    [. . .]

Medina:         Have you been whith a men before or
                with someone your age??

Agent:          ive had sex a couple of times with
                by ex bf but it sucked

Agent:          he is why i dont like high school
                boys

Agent:          they r too into themselves

Medina:         Ok i see

Agent:          is it ok that ive had sex b4?

Medina:         Yes

                    [. . .]

| | |
|---|---|
| **Medina:** | It would be easier that way |
| **Agent:** | how would it be easier? |
| **Medina:** | For you not being virgin |

### iii

Around this time, an agent pretending to be "Rolianis" spoke twice with Medina by phone. The lowlights from their talks include his telling "her" that they could "make sex" at the hotel if "she" was "cool with it," and that he "thought" the police were "going to come" nab him after "she" said "she" was "14" but eventually decided "she" didn't "really sound like a cop."

### 2

As for our specific take on the case, we (as indicated above) think the evidence doesn't show government inducement — even when studied in the light most sympathetic to Medina.

### i

Despite what Medina seemingly implies (and we're referring here to his complaining that the *agent* got the ball rolling by posting the ad), it's "proper" — that is, "not an 'inducement'" — "for the government to use a 'sting,' at least where it amounts to providing a defendant with an 'opportunity' to commit a crime." See United States v. Gendron, 18 F.3d 955, 961 (1st Cir. 1994). Inducement (recall) involves more than the

government's solicitation, suggestion, or an offer of a chance to commit a crime — it involves that, *plus* "something akin to excessive pressure, threats, or the exploitation of an unfair advantage." See Ramos-Paulino, 488 F.3d at 462; see also O'Donovan, 126 F.4th at 40; González-Pérez, 778 F.3d at 11. Medina (remember) theorizes that the agent's asking "him to volunteer more" fun stuff he and "Rolianis" could do counts as a plus factor. But in law as in life, perspective matters. See, e.g., United States v. Saccoccia, 10 F.4th 1, 9 (1st Cir. 2021). And what Medina apparently forgets is that *he* pursued "Rolianis" after "she" said "she" was "14": Yes, he did tell "her" that he doesn't "go out with minors." Yet instead of walking away, *he* (despite having time to consider his actions during the communication pause) reconnected with "her" and later sent the sexually suggestive female-on-bed photo and the shirtless-Medina pic — all of which occurred *before* the agent asked the "fun! what else?" type questions.

To get down to brass tacks, then, the FBI's "conduct here posed no risk of inducing [Medina's] criminality 'rather than ca[tching]' it." See United States v. Sewell, 103 F.4th 1292, 1298 (7th Cir. 2024) (second alteration in original) (quoting United States v. Barta, 776 F.3d 931, 939 (7th Cir. 2015)). Simply put, the agents gave him "the '*ordinary* opportunity to commit the charged crime' and he eagerly took it.'" See id. (emphasis added)

(quoting United States v. Mayfield, 771 F.3d 417, 433 (7th Cir. 2014)); see also Guevara, 706 F.3d at 47 (holding that the government's "[c]learing the way for criminal activity is not the same as pushing the defendant down a pathway toward crime"); United States v. Gifford, 17 F.3d 462, 468 (1st Cir. 1994) (underscoring that "inducement refers to government conduct that persuades a person to turn 'from a righteous path to an iniquitous one'" (quoting United States v. Coady, 809 F.2d 119, 122 (1st Cir. 1987))).

## ii

And Medina's counterarguments aren't tide-turners.

Drawing our attention to just after the judge's final jury charge, Medina makes a single-sentence claim "that the district court failed to construe the evidence in the light most favorable to" him when orally denying his renewed request for an entrapment instruction. But in an earlier pretrial order rejecting "Medina's request for an entrapment defense instruction" — without prejudice to its renewal at the close of evidence — the judge made crystal clear that he knew how to inspect the record. "An entrapment instruction," the judge wrote, "is warranted if the evidence, when *viewed in the light most favorable to the defendant*, 'makes [the entrapment defense] plausible or superficially reasonable.'" United States v. Medina-Ortiz, 633 F. Supp. 3d 531, 536-37 (D.P.R. 2022) (emphasis added) (alteration in original)

(quoting United States v. Pérez-Rodríguez, 13 F.4th 1, 19 (1st Cir. 2021)). We've perused the record in the required light as part of our *de novo* review and agree with the judge. See generally United States v. Rodríguez-Torres, 939 F.3d 16, 23 (1st Cir. 2019) (noting that *de novo* review means that we take our own "fresh" look at the record). So we give Medina's made-in-passing claim no never mind.

Medina also says that the FBI "play[ed] on [his] sympathies." But he waived the argument by not developing it beyond this cursory comment. See, e.g., Miller v. Jackson, 152 F.4th 258, 270 (1st Cir. 2025); FinSight I LP v. Seaver, 50 F.4th 226, 236 (1st Cir. 2022).

Asked at oral argument for the defense's best supporting case, Medina's lawyer said United States v. Gamache, 156 F.3d 1 (1st Cir. 1998). But there are night-and-day differences between that case and Medina's. One example suffices to make the point. Posing as a mother named "Frances," the detective (not the defendant) had steered the topic of communications with the defendant to sex with "Frances's" minor "children" (the defendant initially "was interested in having sex with the adult 'Frances'") — that is, the government was the "first" to "mention[] the 'children' as sex objects" and had "escalated the subject of sex with children." Id. at 4, 10; see also Pérez-Rodríguez, 13 F.4th at 25 (discussing Gamache). Nothing like that

- 17 -

happened here, however.  So <u>Gamache</u> isn't an outcome-changer for Medina.

### iii

Because Medina hasn't met his burden on inducement, we needn't consider predisposition.  <u>See, e.g.</u>, <u>Shinderman</u>, 515 F.3d at 15 n.6.

### Wrapup

The judge having properly denied the requested entrapment instruction, we **_affirm_** Medina's conviction.